STATE OF NORTH CAROLINA v. JOHNNY LEE FLETCHER

No. 8319SC357

(Filed 17 January 1984)

1. **Criminal Law § 10.1— accessory before the fact—conviction on indictment for principal felony**

    The trial court did not err in submitting the issue of accessory before the fact on an indictment charging the principal felony where the offense charged was committed prior to the effective date of former G.S. 14-5.1, which provided that an indictment on the principal felony did not charge accessory before the fact, since prior to the enactment of that statute it was the law in this State that a defendant could be convicted as an accessory on an indictment charging the principal felony.

2. **Corporations § 15.1— criminal liability for corporate malfeasance—insufficient evidence**

    The State's evidence was insufficient to support conviction of defendant, a former president of the North Carolina Jaycees, as an accessory before the fact to corporate malfeasance in the misuse of funds of the North Carolina Jaycee Foundation, Inc. where it failed to show that defendant had the intent to injure or defraud or that defendant believed the actual perpetrator had any criminal intent. G.S. 14-54.

APPEAL by defendant from *Smith, Judge.* Judgment entered 15 December 1982 in Superior Court, CABARRUS County. Heard in the Court of Appeals 5 December 1983.

Defendant was charged in proper bills of indictment with corporate malfeasance and conspiracy to commit corporate malfeasance. Defendant was convicted of accessory before the fact to corporate malfeasance and received a sentence of three to five years and a fine of five thousand dollars ($5,000.00). From the judgment entered, defendant appealed.

*Attorney General Rufus Edmisten, by Special Deputy Attorney General Lester V. Chalmers, Jr. and Associate Attorney General Charles H. Hobgood, for the State.*

*Grant and Hastings, by Wesley B. Grant and Randell F. Hastings, for defendant appellant.*

HILL, Judge.

The State's evidence tends to show the following pertinent facts and circumstances. In 1974, the North Carolina Jaycee Foundation, Inc. (hereinafter "the Foundation") was created in conjunction with a statewide project of the North Carolina Jaycees, Inc. (hereinafter "Jaycees"). The Foundation was established to receive tax deductible charitable contributions. Prior to 1977, the Foundation did not have a separate bank account, and monies received for charitable purposes were deposited in the Jaycee checking account but were allocated to the Foundation. Both defendant and Maurice Wilson were members of the Foundation Board by virtue of their offices held in the Jaycees.

Defendant was the president of the Jaycees for the year 1977-78. The duties of his office were ceremonial to a large degree. As president, defendant wanted to break the record set the year before for extensions. An extension was created when a Jaycee chapter went into a community or institution and established a new Jaycee chapter.

The executive vice-president was Maurice Wilson. The Jaycee by-laws provided that the executive vice-president would conduct the business of the Jaycee corporation under the supervision and direction of the president and treasurer.

To create an extension, the by-laws required that the new chapter have 20 members who had paid their dues to the United States Jaycees. The state headquarters would extend credit to an extension for its charter fees and membership dues. The United States Jaycees, however, extended no credit to the North Carolina Jaycees, requiring them to transmit the entire cash amount for charter fees and dues with their extensions. Due to the difference in credit policies, there was always more money transmitted from the North Carolina Jaycees to the United States Jaycees than had been collected by the North Carolina Jaycees for exten-

sions submitted during a particular month, and deficits could occur in the Jaycees' operating account.

Certain incentives were given for Jaycee chapters to create new extensions. These included contests, plaques, certificates and trophies on the regional level. National awards were also given. The top state president received a national award for growth which was based primarily on extensions. Defendant broke the previous year's record for extensions and won a free trip to Johannesburg, South Africa.

In order to win these awards, the Jaycees created false and fictitious chapters known as paper chapters which were made up of nonexistent members. During defendant's year as president, 156 extensions were reported to national headquarters and of these 61 were paper chapters. The creation of these paper chapters created bad debts for the North Carolina Jaycees.

In July 1977, shortly after defendant had been elected president of the Jaycees, Maurice Wilson advised the defendant that the financial condition of the North Carolina Jaycees "wasn't too good at the time" and that he anticipated a cash flow problem for the Jaycees in August 1977. Defendant suggested they go to the bank and borrow the amount needed. Wilson advised defendant that Walt Hinson of the Wilson Jaycee Chapter had $10,000.00 which had been raised by the Foundation through the sale of jelly, and suggested that the state Jaycees borrow that sum and pay it back. The defendant demurred to the proposal, and Wilson said, "We'll have it back before the State Executive Committee meeting." Again defendant questioned the proposal by inquiring, "Don't we need approval?" Maurice replied, "We don't have time. We need the money now to pay the bills." Wilson then suggested, *knowing the history of the Foundation,* that instead of paying interest on a bank loan, defendant should call Walt Hinson and borrow the $10,000.00. Wilson explained that the Jaycees would avoid interest charges, plus it was "what we had done in the past—that's what was done." Thereupon the defendant called Hinson and subsequently told Wilson that Hinson had agreed to make a loan. The money was received by the Jaycees and deposited in the Jaycee Foundation account.

The defendant was advised of the receipt of the funds and that it would appear on the statement presented to the Executive

Committee. The transfer was in direct violation of the Foundation charter. As it turned out, the Jaycees collected sufficient money in August to meet the expenses, and it was not necessary to transfer any funds from the Foundation to the Jaycee account.

In October 1977 the Executive Committee met. Among the items on the agenda was a $26,500.00 debt due by the Jaycees to the Foundation. The Executive Committee voted to charge the Foundation five per cent of its gross jelly sales as expenses and thereby eliminated the debt. This action was based on an opinion by its legal counsel that such action was appropriate and legal. Actually, expenses in connection with jelly sales were incurred by local Jaycee chapters.

In December 1977 the North Carolina Jaycees sent a check to the United States Jaycees in the sum of $8,964.50, covering 26 new extensions, which resulted in an overdraft of the North Carolina Jaycee account. To cover this overdraft Wilson wrote a check in January 1978 for $10,000.00 on the Foundation account payable to the North Carolina Jaycees and instructed Phyllis Councilman, the Executive Secretary, to deposit it in the North Carolina Jaycee Account. She did so and advised the Treasurer. Wilson testified that he made the transfer based on his conversation with the defendant in August 1977 and because he understood the action of the Executive Committee in October 1977 gave him a "green light." The defendant was advised of the transfer and that such transfer would appear in the financial statement at the next executive meeting. In fact, the financial statement for 31 January 1978 showed the transfer as a $10,000.00 note payable, but no note was executed. Nothing in the record reflects any consent by the Foundation.

An audit of the books by a certified public accountant at the end of 1978 showed an account payable of $16,357.00. This item was identified as including the $10,000.00 due the Foundation previously transferred by Wilson in January 1978.

Subsequently a bill of indictment charged the Executive Vice President Wilson and President Johnny Lee Fletcher with corporate malfeasance and conspiracy to commit corporate malfeasance. Wilson became a witness for the State, and we are concerned only with the charge against defendant Fletcher.

[1]   Defendant first assigns as error the court's submission to the jury of the issue of accessory before the fact on an indictment charging the principal felony. In support of his argument defendant relies on 1979 N.C. Sess. Laws 965, Ch. 811 (codified at G.S. 14-5.1), which reads as follows:

> § 14-5.1. Indictment on principal felony does not charge accessory before the fact. — Any person who shall be charged with the principal felony in an indictment, presentment or information may not be convicted as accessory before the fact to the principal felony on the same indictment, presentment or information. Accessory before the fact is not a lesser included offense of the principal felony.

G.S. 14-5.1 became effective 1 October 1979.

Prior to the enactment of G.S. 14-5.1, it was the law in this state that a defendant could be tried and convicted as an accessory on an indictment charging the principal felony. *See State v. Bryson,* 173 N.C. 803, 92 S.E. 698 (1917); *State v. Simons,* 179 N.C. 700, 103 S.E. 5 (1920); *State v. Jones,* 254 N.C. 450, 119 S.E. 2d 213 (1961). In *State v. Jones, supra,* the court stated:

> Upon the trial of any indictment the prisoner may be convicted of the crime charged therein or a less degree of the same crime . . . G.S. 15-170. The crime of accessory before the fact is included in the charge of the principal crime. (Citations omitted.)

*Id.* at 452, 119 S.E. 2d at 214.

In *State v. Holmes,* 296 N.C. 47, 249 S.E. 2d 380 (1978), the Supreme Court continued to follow this rule but noted that it posed possible problems of double jeopardy. The court suggested that the legislature clarify the matter by abolishing the distinction between accessory before the fact and principal and providing the same punishment for both offenses. *Id.* at 58, 249 S.E. 2d at 387. The legislature responded by enacting G.S. 14-5.1 which instead of abolishing the distinction between accessory before the fact and principal, preserved it by providing that a person indicted for the principal felony could not be convicted as accessory before the fact on the same indictment.

The court first considered the application of G.S. 14-5.1 in *State v. Small,* 301 N.C. 407, 272 S.E. 2d 128 (1980). In *Small,* the defendant was convicted of murder but the evidence established the defendant's guilt only as an accessory before the fact and not as a principal. The court noted that G.S. 14-5.1 had preserved the distinction between accessories and principals and stated that "[u]nless and until the legislature acts to abolish the distinction between principal and accessory, a party to a crime who was not actually or constructively present at its commission may at most be prosecuted, convicted and punished as an accessory before the fact." *Id.* at 429, 272 S.E. 2d at 141.

Although the defendant in *Small* was indicted on the principal charge of murder, the court upheld his conviction as an accessory before the fact because "[a]t the time of the return of the indictment by the grand jury on 4 December 1978, it was the law in this state that one indicted for the principal felony could nevertheless be convicted upon that indictment as an accessory before the fact." *Id.* at 430, 272 S.E. 2d at 142. The court interpreted the language of G.S. 14-5.1 as evidencing a clear legislative intent that the change in procedure mandated by the statute "apply prospectively only, i.e. to those cases in which the indictment itself is returned on or after 1 October 1979." *Id.*

In reaction to the *Small* decision, the General Assembly repealed G.S. 14-5.1 and enacted G.S. 14-5.2, thereby abolishing any distinction between accessories before the fact and principals. The act of the legislature dated 25 June 1981, found at Ch. 686, 1981 N.C. Sess. Laws 984 (codified at G.S. 14-5.2) states as follows in pertinent part:

Section 1. Chapter 14 of the General Statutes is amended by adding a new section to read as follows:

§ 14-5.2. Accessory before fact punishable as principal felon.—All distinctions between accessories before the fact and principals to the commission of a felony are abolished. Every person who heretofore would have been guilty as an accessory before the fact to any felony shall be guilty and punishable as a principal to that felony. . . .

Sec. 2. G.S. 14-5, G.S. 14-5.1, and G.S. 14-6 are repealed.

Sec. 3. This act does not apply to any offense committed before the effective date of this act, and any such offense is punishable under the laws in effect at the time such offense was committed.

Sec. 4. This act shall become effective on July 1, 1981, and is applicable to all offenses committed on and after that date.

The first question presented by this appeal is whether the court erred in submitting the issue of accessory before the fact on an indictment charging the principal felony in light of G.S. 14-5.1 and G.S. 14-5.2. We agree with the State that G.S. 14-5.1 does not apply to the present case. Session Laws 1981, Ch. 686, Sec. 3 provides that the law to be applied is the law that was in effect at the time the offense was committed.

The fact the court in *Small* tied the application of G.S. 14-5.1 to the time the indictment is returned does not persuade us to hold otherwise.[1] The language of Section 3 of Chapter 686 is clear and unambiguous. When the language of a statute is clear and unambiguous, it must be given effect and its clear meaning may not be evaded by a court under the guise of construction. *Utilities Comm. v. Edmisten, Atty. General,* 291 N.C. 451, 232 S.E. 2d 184 (1977).

In the present case, defendant asked Walt Hinson to send the $10,000.00 jelly sale proceeds to state headquarters in July 1977. In January 1978, this money was transferred from the Foundation's account to the Jaycee account. G.S. 14-5.1 was not effective until 1 October 1979 and as was established by *State v. Small, supra,* did not apply retroactively. Therefore, at the time defendant committed the offense charged, the law permitted the court to submit the issue of accessory before the fact on an indictment charging the principal felony.

[2] Defendant next assigns as error the court's denial of his motion to dismiss as to all charges at the close of all the evidence. For reasons following we conclude the court erred in denying defendant's motion. When a defendant moves for dismissal, the court is to determine whether there is substantial evidence (a) of

1. Defendant was indicted on 23 March 1981.

each essential element of the offense charged, or of a lesser included offense, and (b) of defendant's being the perpetrator of the offense. *State v. Earnhardt,* 307 N.C. 62, 65-66, 296 S.E. 2d 649, 651 (1982). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (Citations omitted.) *State v. Smith,* 300 N.C. 71, 78-79, 265 S.E. 2d 164 (1980).

The bill of indictment directs its charges against the defendant for wrongs allegedly committed by him against the Foundation as an accessory. In order to convict the defendant of being an accessory before the fact the State was required to prove (1) that defendant counseled, procured, commanded, encouraged, or aided another to commit the offense; (2) defendant was not present when the crime was committed; and (3) the principal committed the crime. *State v. Hunter,* 290 N.C. 556, 227 S.E. 2d 535 (1976), *cert. denied,* 429 U.S. 1093, 51 L.Ed. 2d 539, 97 S.Ct. 1106 (1977).

A careful scrutiny of the record leads us to conclude that the State has failed to introduce substantial evidence of a conspiracy to violate G.S. 14-254 which read in pertinent part as follows at the time of the offense:

(a) Malfeasance of corporate officers and agents —

(a) If any president, director, cashier, teller, clerk or agent of any corporation shall embezzle, obstruct, or wilfully apply any of the monies, funds or credits of the corporation, or shall, without authority from the directors, issue or put forth any certificate of deposit, draw any order or bill of exchange, make any acceptance, assign any note, bond, draft, bill of exchange, mortgage, judgment or decree, or make any false entry in any book, report or statement of the corporation with the intent in either case to injure or defraud or to deceive any officer of the corporation, or if any person shall aid and abet in the doing of any of these things, he shall be guilty of a felony . . . .

The record clearly reveals that the defendant as a newly elected President of the Jaycees would be managing a job largely ceremonial in nature. The affairs of the organization were conducted by Maurice Wilson, the Executive Vice-President, and the Executive Secretary, both of whom were paid on-going employ-

ees. When Wilson presented the shortfall in cash as an immediate problem to the defendant, he identified the acquisition of proceeds from the Wilson chapter as a loan to be repaid, and as something which had been done before. When the defendant raised the question of approval, Wilson not only indicated that the club did not have time, but that the money would be repaid before the Executive Committee meeting, a time only two months away. Again Wilson emphasized, it was "what we have done in the past." The defendant had every legitimate reason to believe that the transfer of funds was a loan to be repaid. Subsequent handling and the certified public accountant audit identified it as a loan, nothing more. What action that was taken by the Executive Committee in October, before the money was used in January, becomes immaterial. There is no evidence that at the time the defendant made the telephone call regarding the transfer of money, he had any criminal intent to injure or defraud; and no evidence exists that defendant believed Wilson had any criminal intent. To render one guilty as an accessory before the fact, he must have had the requisite criminal intent. 22 C.J.S. Crim. Law, sec. 92, p. 271. If the evidence is sufficient only to raise a suspicion as to the commission of the offense, the motion to dismiss should be allowed. *State v. Cutler*, 271 N.C. 379, 382, 156 S.E. 2d 679, 682 (1967). This is true even though the suspicion so aroused by the evidence is strong. *State v. Evans*, 279 N.C. 447, 453, 183 S.E. 2d 540, 544 (1971).

This assignment of error has merit, and the defendant's motion to dismiss should have been allowed. The remaining assignments of error become moot.

The decision to deny defendant's motion to dismiss at the close of the evidence is reversed and the judgment entered on the verdict is vacated.

Reversed and vacated.

Chief Judge VAUGHN and Judge BECTON concur.