STATE OF NORTH CAROLINA v. VIRGINIA ANN DAVIS

No. 322A86

(Filed 2 June 1987)

**Criminal Law § 10.3— homicide—accessory before the fact—instructions**

The jury in a prosecution for second degree murder as an accessory before the fact was not adequately instructed with respect to the chain of causation necessary to a conviction of accessory before the fact to murder where the instructions made no mention of the necessary causal connection between defendant's alleged statements and the murderer's admitted actions. Causation of a crime by an alleged accessory is not inherent in the accessory's counsel, procurement, command or aid of the principal perpetrator.

APPEAL by defendant from the judgment of *John, J.,* entered at the 17 February 1986 Session of GUILFORD County Superior Court, Greensboro Division, imposing a life sentence following defendant's conviction of second degree murder as an accessory before the fact. Heard in the Supreme Court on 13 April 1987.

*Lacy H. Thornburg, Attorney General, by George W. Boylan, Special Deputy Attorney General, for the state.*

*Walter E. Clark, Jr., for defendant-appellant.*

EXUM, Chief Justice.

Defendant was convicted of the second degree murder of her husband, Joseph Marvin Davis, as an accessory before the fact. She argues, *inter alia,* that her conviction must be overturned because the trial judge failed to instruct the jury that she could be found guilty only if her alleged counseling of the principal perpetrator caused him to murder the decedent. We agree and order a new trial. Defendant's remaining assignments of error may not arise at her new trial and therefore will not be discussed in this opinion.[1]

---

1. Defendant also contends that the trial court erred in denying her motion for sanctions for failure of the state to provide discovery; in denying her request for sequestration and segregation of the state's witnesses; in admitting evidence relating to the activities of her daughter, Angel Lilly; in sustaining the state's objection to her cross-examination of Kenneth Creed; in admitting objectional hearsay and opinion testimony; in allowing the state to harass her on cross-examination; in denying her motion to dismiss at the close of all the evidence; and in finding that she occupied a position of leadership or dominance in the commission of this crime.

The state's evidence tended to show that Joseph Marvin Davis died of shotgun wounds outside his home near Highway 62 in Guilford County. Winford Day, an acquaintance of defendant, admitted shooting the victim on the evening of 17 July 1984.

Several witnesses testified that defendant often spoke with them about her desire to have her husband killed. Winford Day stated that he first met defendant and her daughter, Angel Lilly, in early 1984, while living with members of the Platt family in Elgin, South Carolina. Defendant told Day that her husband beat her and was "bad" to her. Later, in Columbia, South Carolina, defendant approached Day "wanting to have Joe Davis killed." Several other people were in the room during this conversation, including Angel Lilly and the victim's former business partner, Mike Platt. According to Day, defendant said "she could get her hands on $2,000 to have Joe Davis killed." On another occasion Mike Platt came to Winford Day and asked if he knew anyone who might kill Joe Davis. Day gave Platt the name "Thunder," a fictitious member of a motorcycle gang.[2] Sometime after this, defendant approached Day "wanting to know about Thunder, wanting to know how much he would charge to have Joe Davis killed, and how it would be done." Defendant allegedly said she could "get her hands on $2,000 before he was killed, and after he was killed she could get her hands on some more." Still later, at defendant's home in North Carolina, defendant asked Day when Thunder was going to kill her husband. When Day replied that he was thinking about doing it himself, defendant told him that she attended karate classes on Tuesday and Thursday nights, and "that would be a good night to have it done."

Day also testified that he had been sexually involved with Angel Lilly, defendant's daughter. Sometimes Angel would tell him that if he did not kill Joe Davis she would do it herself. Both Angel and defendant told Day how the decedent "beat on them and slapped them around." Angel also told Day that Joe Davis had been sexually assaulting her, which Day said "made me mad." On the night before Joe Davis was killed, Angel called Day in South Carolina and told him that the decedent "had got her up against the wall [of a storage shed] and stated that if she would

2. Day testified that he made the name up because he wanted to end the conversation with Platt.

be good to daddy, daddy would be good to her." Day told her not to worry about it because "it would be done the next night." The next day, Winford Day borrowed a shotgun, drove up from South Carolina, waited in the woods for Joe Davis to return home, and shot him twice when he arrived at the front porch and stuck his keys in the door.

When asked why he killed Joe Davis, Day said:

Well, some of me wants to say about what he done to Angel, but I can't say that was the only reason. I don't believe if Virginia and them would have kept pressuring me about killing Joe or having someone kill Joe, I don't think I would have done it if they hadn't been pressuring me.

Day admitted, however, that he previously had denied defendant's involvement in the murder.

Herman Waddell, defendant's business associate, testified concerning a conversation he had with Winford Day at the Guilford County Jail:

After I got to the county jail there, I began to talk with Winford Day. I told Winford that I had several questions that I wanted to ask him. Then I asked him if he'd mind if I would tape this conversation.

He said, "No, I have no objection to it."

So then I took out the little mike and I placed it on the phone and I began talking with it. . . .

I said, "Did Virginia Davis have anything to do with the killing of her husband?"

He said, "No, she did not."

I said, "Do you think she's capable of having anybody killed?"

He said, "No, I do not." He said, "Tell her that she don't have anything to worry about." He said, "She didn't have anything to do with it and she doesn't have anything to worry about."

Edward Cobbler, a private investigator hired by defendant, testified that he had interviewed Day at the Guilford County Jail. Day told him that he shot Joe Davis because of "the sexual assault that had occurred on Angel." According to Cobbler, Day had "specifically and emphatically said that Virginia Davis did not have anything to do with it."

Defendant testified in her own behalf and denied complicity in the murder of her husband.

During the charge conference the trial judge informed the parties that he intended to tell the jury that they could find defendant guilty of second degree murder if they found (1) that Winford Day committed the second degree murder of Joe Davis, and (2) that defendant knowingly instigated, counseled or procured Day to commit this murder. Defendant's counsel, in accordance with R. App. P. 10(b), objected to this instruction on the grounds that it might cause the jury to return a guilty verdict even though defendant's actions and statements had no causal connection with Day's crime. The trial judge overruled the objection and instructed the jury as follows:

> In this case, members of the jury, the defendant has been accused of second-degree murder. Second-degree murder is the unlawful killing of a human being with malice. A person may be guilty of second-degree murder, although she personally does not do any of the acts necessary to constitute second-degree murder, and even though she may not have been present at the scene of the crime.
>
> Now, I charge that for you to find the defendant guilty of second-degree murder under the facts of this case, the State must prove beyond a reasonable doubt: First of all, that second-degree murder was committed by Winford Day. . . .
>
> In addition, members of the jury, for you to find the defendant guilty of second-degree murder under the facts of this case, the State must prove beyond a reasonable doubt that the defendant—that is, Virginia Ann Davis—knowingly instigated, counseled or procured Winford Day to commit that crime. . . .

So I charge, members of the jury, that if you find from the evidence beyond a reasonable doubt that on or about the day in question Winford Day committed second-degree murder—that is that Winford Day unlawfully killed Joseph Marvin Davis with malice—and that Virginia Ann Davis knowingly instigated, counseled or procured Winford Day to commit second-degree murder, it would be your duty to return a verdict of guilty of second-degree murder as to Virginia Ann Davis.

Defendant contends that this instruction fails to state the necessity of a causal connection between the actions of defendant and those of Winford Day. In particular, defendant argues that the jury could find that defendant "counseled" Winford Day about killing Joe Davis, but that her counseling had nothing to do with the shooting itself. The state, in response, contends that the instruction given substantially provides "the direct causal connection requested by defendant."

This Court has stated the elements of accessory before the fact to murder as follows:

1) Defendant must have counseled, procured, commanded, encouraged, or aided the principal to murder the victim;

2) the principal must have murdered the victim; and

3) defendant must not have been present when the murder was committed.

*State v. Sams*, 317 N.C. 230, 237, 345 S.E. 2d 179, 184 (1986); *State v. Woods*, 307 N.C. 213, 218, 297 S.E. 2d 574, 577 (1982); *State v. Hunter*, 290 N.C. 556, 576, 227 S.E. 2d 535, 547 (1976), *cert. denied*, 429 U.S. 1093, 51 L.Ed. 2d 539 (1977). It is generally recognized, however, that "[a] person is criminally responsible for a homicide only if his act caused or directly contributed to the death of the victim." *State v. Brock*, 305 N.C. 532, 539, 290 S.E. 2d 566, 571 (1982); *State v. Luther*, 285 N.C. 570, 206 S.E. 2d 238 (1974). In cases where a defendant is prosecuted as an accessory before the fact to murder, the state must prove beyond a reasonable doubt that the actions or statements of the defendant somehow caused or contributed to the actions of the principal, which in turn

caused the victim's death. *See State v. Hunter*, 290 N.C. 556, 227 S.E. 2d 535; *State v. Benton*, 276 N.C. 641, 174 S.E. 2d 793 (1970).[3]

In *State v. Benton*, defendant was charged as an accessory before the fact to the murder of her husband. The principal felon, Raymond Epley, testified that he shot defendant's husband because defendant " 'asked him to and told him that [the victim] was going to kill him if he didn't do it, and she kept pushing him and he went and done it.' " *Benton*, 276 N.C. at 647, 174 S.E. 2d at 797. Defendant argued that the trial judge failed to inform the jury of the necessity of a causal connection between her statements and the actions of the principal. This Court held that the judge's charge, taken as a whole, was adequate. The judge told the jury

> that before they could convict defendant they must find that her request and demands that Epley murder Benton caused him to commit the crime. . . . [T]he jurors were instructed that for the State to prove that defendant procured Epley to murder Benton it must first show that he had sufficient mental capacity to understand and carry out defendant's commands; that, lacking such capacity, he could not have killed Benton as the result of defendant's procurement, and she would not be guilty. *Inter alia*, the judge also told the jury that to be guilty as an accessory before the fact to murder "a defendant must (have) incited, procured or encouraged the commission of the crime so as to participate therein by some words or acts," and must have given instructions, directions or counsel which were "substantially followed."

*Id.* at 654, 174 S.E. 2d at 802.

The defendant in *State v. Hunter* made an identical assignment of error, and we again found that "the trial court in fact required an immediate causal connection" between the actions of the accessory and those of the principal. *Hunter*, 290 N.C. at 578, 227 S.E. 2d at 548. *Hunter* involved an attempted armed robbery

3. Generally there is little or no dispute over whether an accessory's statements or actions, *if they occurred*, caused or contributed to the principal's actions. *See State v. Sams*, 317 N.C. 230, 345 S.E. 2d 179; *State v. Woods*, 307 N.C. 213, 297 S.E. 2d 574; *State v. Mozingo*, 207 N.C. 247, 176 S.E. 582 (1934). Instead, the factual issue is likely to focus on whether the alleged accessory "counseled, procured, or commanded the principal *at all.*" *State v. Hunter*, 290 N.C. at 578, 227 S.E. 2d at 549 (emphasis added).

that resulted in the murder of William Potts. The trial judge, in his final mandate,

> charged that the jury must find the defendant not guilty unless they found that "before the killing was committed the defendant . . . pointed out the Potts residence and store to Billy Devine and told Billy Devine . . . that he would have to rob Mr. Potts when he was at home, and that defendant was to get part of the money, and that *in so doing* the defendant, Harry Hunter, counseled or procured, or commanded or knowingly aided Billy Devine to attempt to commit armed robbery. . . .

*Id.* 227 S.E. 2d at 548-49 (emphasis added). Thus, the trial judge pointed to specific actions of the defendant which, if the jury found they had occurred, would clearly establish a causal connection between the defendant and the murder of Mr. Potts.

The *Hunter* opinion does, at one point, seem to suggest that the jury instructions given in the present case would be adequate because a causal connection between the actions of an accessory and those of the principal is "inherent" in the accessory's "counsel, procurement, command, or aid" of the principal. "Otherwise," we said, "there would be no real counsel, procurement, command, or aid." *Hunter*, 290 N.C. at 578, 227 S.E. 2d at 548. This statement has been the source of some confusion, and we hereby disavow it. Causation of a crime by an alleged accessory is not "inherent" in the accessory's counsel, procurement, command or aid of the principal perpetrator.

In the present case there was conflicting evidence as to whether the statements of defendant caused or directly contributed to the shooting of her husband by Winford Day. At trial, Day said that he did not think he would have done it if defendant had not been pressuring him. On the other hand, he indicated that he acted at least partly in response to the victim's alleged abuse of Angel Lilly. In addition, Day told two people before trial that defendant had nothing to do with the murder of her husband.

The trial court's instructions in this case, even when viewed as a whole, made no mention of the necessary causal connection between defendant's alleged statements and Winford Day's admitted actions. Moreover, no specific reference to the actions or

statements allegedly made by defendant was included in the charge. The judge simply stated that defendant should be found guilty if the jury found that Day murdered Joe Davis, and that defendant "knowingly instigated, counseled or procured" the murder.

We hold that the jury in this case was not adequately instructed with respect to the chain of causation necessary to a conviction of accessory before the fact to murder. Given the charge that appears in the record, the jury could have found defendant guilty even though her "counseling" of Winford Day had nothing to do with Day's subsequent murder of Joe Davis. Defendant therefore must have a

New trial.