STATE OF NORTH CAROLINA v. DEVON MAURICE GLYNN

No. COA05-1460

(Filed 1 August 2006)

**1. Aiding and Abetting— instructions—"somehow" contributing to crime—burden of proof**

A clarifying instruction that the State must prove that an aider and abettor "somehow"contributed to the victim's death did not lessen the State's burden of proof. The instruction is supported by case law, and, taken as a whole, properly set out the elements of the crime and did not reduce the State's burden of proof.

**2. Homicide— first-degree murder—aiding and abetting— short form indictment**

A short form indictment properly apprised defendant of the charge of first-degree murder based on aiding and abetting. Short form indictments have been held again and again to be sufficient to charge first degree murder on the basis of any theory set forth in N.C.G.S. § 14-17, and a defendant must be prepared to defend any and all legal theories supported by the facts when the facts are sufficiently pled. A bill of particulars may be requested to supplement the facts in the indictment, but this defendant did not do so.

**3. Homicide— aiding and abetting first degree murder—no variance between indictment and trial**

There was no fatal variance between the allegations in the indictment and the evidence at trial in a first-degree murder prosecution. The State is not required to declare any specific theory for first degree murder prior to trial; the State's evidence here, regardless of the theory, supports the indictment.

**4. Evidence— hearsay—statement offered to show effect on defendant—not offered for truth of the matter**

A statement repeated in a prosecution for aiding and abetting a first-degree murder was not hearsay because it was not offered for the truth of the matter, but to show the effect it had on defendant regardless of its truth.

**5. Homicide— first-degree murder—short form indictment— aiding and abetting**

A short form indictment was sufficient to charge aiding and abetting first-degree murder. The North Carolina Supreme Court has repeatedly held such indictments sufficient, regardless of the theory under which the State proceeds.

Appeal by defendant from judgment entered 16 November 2004 by Judge Howard E. Manning, Jr. in Wake County Superior Court. Heard in the Court of Appeals 7 June 2006.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Jill Ledford Cheek, for the State.*

*Nora Henry Hargrove for defendant-appellant.*

HUNTER, Judge.

Devon Maurice Glynn ("defendant") appeals from a judgment dated 16 November 2004 entered consistent with a jury verdict finding him guilty of first degree murder. For the following reasons, we find defendant's trial to be without error.

The State's evidence tended to show that defendant and Brandie Bullock ("Bullock") were involved in a romantic relationship, and Bullock believed they would get married someday, according to Christina Holder ("Holder"), Bullock's friend. On 30 July 2003, while riding around Raleigh with defendant and friends, Bullock received a phone call from Christopher Moore ("Moore"), whom she had met

previously at a club, a meeting staged by Jonathan Allen ("Allen"). Bullock told Allen that the caller was "the guy in the club you put me on[.]" Allen then told defendant the caller was the person who had given Allen counterfeit money for drugs. Holder testified that defendant responded, "m—— f——ers can't get away with getting over on him."

Defendant continued driving Bullock, Holder, Allen, and Lamont Turner ("Turner") around Raleigh most of the day, making multiple stops at various places. During one stop, defendant and Allen went inside an apartment, quickly returning to the vehicle. Holder then noticed a gun on the floorboard by her foot. The group next went to an apartment belonging to Paula Lucas ("Lucas"), where drugs were frequently bought and sold. Allen, Bullock, and defendant went into a bedroom while the rest of the group waited in the living room. Bullock soon emerged carrying a pocketbook which held the gun.

The group returned to the vehicle, where defendant and Bullock sat in the front seat. Defendant again told Bullock, "m—— f——ers can't get away with doing this[.]" Holder testified defendant instructed Bullock how to use the gun, and told Bullock to shoot Moore. Bullock responded that she knew how to use the gun.

Bullock and Moore exchanged additional telephone calls, making a plan for Moore to pick up Bullock and Holder at a McDonald's restaurant. On the way to the restaurant, defendant told Bullock, "yo, boo, you can do this for me. Ain't nobody else can do it, you can do it." Defendant told Bullock, "I['ve] got my cell phone and I'm going to be behind you all."

At McDonald's, the two girls got into the backseat of Moore's vehicle, with Bullock seated behind Moore. Moore drove them to Tysean Lunsford's ("Lunsford") apartment complex. Bullock and Holder saw defendant following Moore's vehicle to the apartment parking lot. As Moore began to park the vehicle, Bullock stated, "f—— this s——," and shot Moore in the back of the head. Bullock and Holder then jumped out of the vehicle and ran to defendant's Suburban. Defendant drove away with Bullock and Holder, stating, "[m]y boo did it. My boo did it. . . . I won't [sic] believe she did it, but my boo did it."

The group drove around in search of marijuana, then went to Bullock's apartment. Bullock told the group what had happened. She said she "had to do it" because if she had thought about it, she "would

have never did [sic] it," so she "just went ahead and did it." Defendant responded, "my boo gangster," and "my boo did it[.]" Defendant also told the group, "If you all want to hang around me, you all got to put in work[,]" which Holder testified meant that they had to "do dirt," meaning to commit crimes.

The group eventually left for Lucas's apartment, dropping off Allen before arriving. Once there, defendant handed Lucas the gun and told her she would be "going down" for the murder. Defendant then gave the gun to Turner, who disposed of the gun by burying it.

Around midnight on 31 July 2003, Lunsford and a friend discovered Moore slumped over in the driver's seat of his vehicle in the parking lot of Lunsford's apartment complex. They called the police, who found the front doors of Moore's vehicle locked and the rear doors unlocked. Holder's fingerprints were lifted from the right rear passenger window. The pathologist found that Moore's death was caused by a gunshot wound to the back of the neck.

Defendant cross-examined Holder regarding her testimony at an earlier trial that defendant was not the leader of the group, and that defendant did not make anyone do anything they didn't want to do. Holder testified at defendant's trial that people did what defendant told them to do "the majority of the time."

Defendant appeals after being found guilty of first degree murder and sentenced to life imprisonment without parole.

I.

**[1]** Defendant first contends that the jury instructions were erroneous and lessened the State's burden of proof. We disagree.

Under the due process clauses of the Fifth and Fourteenth Amendments of the United States Constitution, the State carries the burden to prove the defendant's guilt beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 362, 25 L. Ed. 2d 368, 374 (1970); *State v. Jordan,* 305 N.C. 274, 279, 287 S.E.2d 827, 831 (1982). Accordingly, the Sixth Amendment guarantee of a trial by jury requires a defendant be found guilty beyond a reasonable doubt. *Sullivan v. Louisiana,* 508 U.S. 275, 278, 124 L. Ed. 2d 182, 188 (1993).

Jury instructions must clearly show the State's burden to prove each element beyond a reasonable doubt. *State v. Morgan,* 359 N.C. 131, 163, 604 S.E.2d 886, 906 (2004), *cert. denied,* 546 U.S. 830, 163

L. Ed. 2d 79 (2005). The standard of review for jury instructions is well-established:

> "This Court reviews jury instructions
>
> 'contextually and in its entirety. The charge will be held to be sufficient if "it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed[.]" . . . "Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury." ' "

*State v. Blizzard,* 169 N.C. App. 285, 296-97, 610 S.E.2d 245, 253 (2005) (citations omitted). When reviewed as a whole, "isolated portions of [a charge] will not be held prejudicial when the charge as a whole is correct. [T]he fact that isolated expressions, standing alone, might be considered erroneous will afford no ground for a reversal." *State v. McWilliams,* 277 N.C. 680, 684-85, 178 S.E.2d 476, 479 (1971) (citations omitted); *see also State v. Rich,* 351 N.C. 386, 393-94, 527 S.E.2d 299, 303 (2000).

"All distinctions between accessories before the fact and principals to the commission of a felony" have been abolished by our statutes. N.C. Gen. Stat. § 14-5.2 (2005). A defendant may be convicted of first degree murder under a theory of aiding and abetting. *State v. Brewington,* 352 N.C. 489, 524, 532 S.E.2d 496, 516-17 (2000).

> A person is guilty of a crime by aiding and abetting if (i) the crime was committed by some other person; (ii) the defendant knowingly advised, instigated, encouraged, procured, or aided the other person to commit that crime; and (iii) the defendant's actions or statements caused or contributed to the commission of the crime by that other person.

*State v. Goode,* 350 N.C. 247, 260, 512 S.E.2d 414, 422 (1999).

The State asserted Bullock was the shooter, but that defendant was guilty of first degree murder by aiding and abetting Bullock. The judge initially instructed the jury:

> [I]f you find from the evidence beyond a reasonable doubt that . . . [defendant] knowingly instigated, encouraged, advised or procured or aided Brandie Bullock to commit the crime of first degree murder of Christopher Moore, and that in so doing [defendant]'s actions or statements caused the commission of the

crime by Brandie Bullock, it would your [sic] duty to return a ver-
dict of guilty of first degree murder. However, if you do not so
find or have a reasonable doubt as to one or more of these things,
it would be your duty to return a verdict of not guilty of first
degree murder.

After deliberations began, the jury asked the trial court for a def-
inition of cause for element three of the charge. After hearing argu-
ments by counsel, the trial court re-instructed the jury:

It is generally recognized that a person is criminally responsible
for a homicide only if his act caused or directly contributed to
the death of the victim. In this case, where the Defendant . . . is
prosecuted as an aider and abetter of the crime of first degree
murder, the State must prove beyond a reasonable doubt that
the actions or statements of [defendant] *somehow* caused . . . the
victim's death.

(Emphasis added.) The trial court then repeated the words of the
original mandate, "and that in so doing [defendant]'s actions or state-
ments caused the commission of the crime by Brandie Bullock[.]"

Defendant argues the word "somehow" lessened the State's bur-
den by vitiating the "knowing" aspect of defendant's actions.
However, the trial court's instruction is supported by case law. In
*State v. Davis*, 319 N.C. 620, 356 S.E.2d 340 (1987), our Supreme
Court stated, "[i]n cases where a defendant is prosecuted as an ac-
cessory before the fact to murder, the [S]tate must prove beyond a
reasonable doubt that the actions or statements of the defend-
ant *somehow* caused or contributed to the actions of the princi-
pal, which in turn caused the victim's death." *Id.* at 624-25, 356
S.E.2d at 343 (emphasis added). Taken as a whole, the trial court's
clarifying instructions properly set out the elements of the crime and
did not lessen the State's burden of proof. Defendant's assignment of
error is overruled.

II.

**[2]** Defendant next contends the indictment was fatally defective, as
it did not give defendant notice of the charge of aiding and abetting.
Defendant further contends there was a fatal variance between the
indictment and the proof at trial. We disagree.

Due process requires that a defendant receive notice and an
opportunity for an appropriate hearing. *Hamdi v. Rumsfeld*, 542 U.S.

507, 533, 159 L. Ed. 2d 578, 601 (2004). "At a minimum, due process requires adequate notice of the charges and a fair opportunity to meet them, and the particulars of notice and hearing must be tailored to the capacities and circumstances of those who are to be heard." *State v. Young*, 140 N.C. App. 1, 7, 535 S.E.2d 380, 384 (2000) (citation omitted) (emphasis omitted). The indictment must be sufficiently specific to provide notice of the charges and allow the defendant to prepare his case. *State v. Thrift*, 78 N.C. App. 199, 201, 336 S.E.2d 861, 862 (1985).

An indictment is sufficient if the charge against the defendant is expressed "in a plain, intelligible, and explicit manner[.]" N.C. Gen. Stat. § 15-153 (2005). "[T]he indictment must allege all of the essential elements of the crime sought to be charged." *State v. Westbrooks*, 345 N.C. 43, 57, 478 S.E.2d 483, 492 (1996). The North Carolina Supreme Court has repeatedly held that the short form indictment which complies with N.C. Gen. Stat. § 15-144 is constitutionally and statutorily sufficient to charge first degree murder "on the basis of *any theory* set forth in N.C.G.S. § 14-17." *State v. Garcia*, 358 N.C. 382, 388, 597 S.E.2d 724, 731 (2004), *cert. denied*, 543 U.S. 1156, 161 L. Ed. 2d 122 (2005):

"[T]he State is not required to elect between theories of prosecution [for first degree murder] prior to trial." *Id.* at 389, 597 S.E.2d at 732. When the State sufficiently pleads the factual basis of the prosecution, "a defendant must be prepared to defend against any and all legal theories which [the] facts may support." *State v. Holden*, 321 N.C. 125, 135, 362 S.E.2d 513, 522 (1987). *But see State v. Silas*, 360 N.C. 377, 383, 627 S.E.2d 604, 608 (2006) ("[i]f the State seeks an indictment which contains specific allegations of the intended felony, the State may not later amend the indictment to alter such allegations").

Furthermore, a defendant may request a bill of particulars to supplement the facts in the indictment in order to better prepare his defense. *State v. Randolph*, 312 N.C. 198, 210, 321 S.E.2d 864, 872 (1984). A motion for such a bill "must request and specify items of factual information desired by the defendant which pertain to the charge and which are not recited in the pleading, and must allege that the defendant cannot adequately prepare or conduct his defense without such information." N.C. Gen. Stat. § 15A-925(b) (2005). We note the record does not show that defendant requested a bill of particulars. As the short form indictment properly apprised defendant of the charges against him, this assignment of error is overruled.

**[3]** Defendant further argues that a material variance existed between the indictment charging first degree murder and the evidence presented at trial. We disagree.

When a variance exists between allegations in the indictment and evidence presented at trial, the defendant may be deprived of adequate notice to prepare a defense. *State v. Norman*, 149 N.C. App. 588, 594, 562 S.E.2d 453, 457 (2002). Only a material variance warrants reversal, as it involves an essential element of the alleged crime. *Id.*

As discussed *supra*, the State is not required to declare any specific theory of prosecution for first degree murder prior to trial. *Garcia*, 358 N.C. at 389, 597 S.E.2d at 732. Here, defendant appears to contend that evidence presented at Bullock's trial presented a theory that defendant was the shooter. We note that defendant fails to point to any evidence presented at his trial that he was the shooter. The State's evidence, regardless of the theory, supported the indictment for first degree murder, and this assignment of error is overruled.

III.

**[4]** Defendant next asserts that testimony given by Bullock contained inadmissible hearsay which was erroneously admitted at trial. We disagree.

Hearsay is generally inadmissible. N.C. Gen. Stat. § 8C-1, Rule 802 (2005). " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2005). However, out-of-court statements offered for a purpose other than to prove the truth of the matter asserted are not hearsay and are not excluded by the hearsay rule. *State v. Reid*, 335 N.C. 647, 661, 440 S.E.2d 776, 784 (1994). Statements used to explain the subsequent conduct of the person to whom the statement was made are admissible, as they are not offered to prove the truth of the matter asserted. *State v. Coffey*, 326 N.C. 268, 282, 389 S.E.2d 48, 56 (1990).

In the instant case, Holder testified that when the group was in the car, Bullock received a phone call on her cell phone. Bullock then told Allen that the caller was Moore, the same person Allen had pointed out to her at a club. The State argued, and the trial court agreed, that the statement was offered only to show its effect on defendant.

STATE v. GLYNN

[178 N.C. App. 689 (2006)]

As Bullock's statement was not offered to prove the truth of the matter asserted but rather to show its effect on defendant, regardless of its truth, the statement was admissible. Bullock's statement affected the subsequent conduct of defendant; he immediately began persuading Bullock to shoot Moore. Therefore, the trial court's admission of the statement was not error. Defendant's assignment of error is overruled.

IV.

[5] Defendant finally asserts the trial court was without jurisdiction to try defendant because the indictment was insufficient to charge first degree murder. We disagree.

As discussed *supra*, the short form indictment has repeatedly been held sufficient by the North Carolina Supreme Court to charge a defendant with first degree murder, regardless of the theory under which the State proceeds. *Garcia*, 358 N.C. at 388, 597 S.E.2d at 731. This Court is bound by decisions of the North Carolina Supreme Court. *Dunn v. Pate*, 334 N.C. 115, 118, 431 S.E.2d 178, 180 (1993). Defendant acknowledges that the North Carolina Supreme Court has upheld the constitutionality of the short form indictment, but raises the issue to preserve it in the event of further review and in anticipation of a change in the law on this issue. Defendant's assignment of error is overruled.

We find no error in the trial court's instructions to the jury, and no defect in the indictment for first degree murder or variance with the evidence presented at trial. We further find the trial court properly admitted non-hearsay statements. Defendant's trial was without error.

No error.

Judges BRYANT and CALABRIA concur.