STATE OF NORTH CAROLINA v. CLEASTER WOODS

No. 229A82

(Filed 7 December 1982)

**1. Criminal Law § 10.2— accessory before the fact of murder—sufficiency of evidence**

There was substantial evidence of each of the three elements of accessory before the fact of murder where (1) there was testimony that defendant agreed to pay the principal $30,000.00 out of the insurance proceeds on her husband's life if the principal would kill defendant's husband, (2) the jury could reasonably infer that defendant was not present when the principal shot her husband, and (3) the principal admitted that he was the one who shot defendant's husband after lying in wait for him. Defendant's life sentence was proper in that the Legislature abolished the difference in guilt and sentencing treatment between the principal to the felony and an accessory by repealing G.S. 14-5, G.S. 14-5.1 and G.S. 14-6 and replacing them with G.S. 14-5.2.

**2. Conspiracy § 6— conspiring to commit murder—sufficiency of the evidence**

The evidence was sufficient to convict defendant of conspiring to commit murder where the State's witness testified to the effect that he agreed with defendant that for $10,000.00 in insurance proceeds he would find a "hit man" to kill defendant's husband.

**3. Criminal Law § 163— failure to object to jury charge—waiver of objection**

Under Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure, defendant may not assign the trial court's failure to instruct the jury on the defense of abandonment of the criminal enterprise as error where defendant failed to object thereto before the jury retired.

**4. Criminal Law § 146.4— failure to raise constitutional question at trial level—inability to raise question on appeal**

Because defendant failed to ask the trial court to pass upon the constitutionality of G.S. 15A-626, the Supreme Court declined to review the constitutionality of the statute on appeal.

**5. Homicide § 12— no constitutional right to indictment stating aggravating circumstances**

The United States Constitution does not require that a first-degree murder indictment give allegations of aggravating circumstances to fulfill constitutional demands of pretrial notice.

**6. Criminal Law § 98.2— denial of motion to sequester witnesses—no abuse of discretion**

Defendant made no showing that the trial court abused its discretion in denying her motion to sequester the witnesses, and the Court perceived none.

**7. Criminal Law § 88— cross-examination limited—no abuse of discretion**

Defendant failed to show that the verdict was improperly influenced by the trial court's limiting of defendant's cross-examination of the State's chief witness.

**8. Criminal Law § 102.3— closing argument by State—objection to, and cure of, impropriety**

Where defense counsel objected to each of two improper arguments to the jury, and in both instances, the trial court sustained defense counsel's objections and immediately instructed the jury to disregard the improper portion of the State's closing argument, the improprieties were cured and possible prejudice to the defendant was avoided.

**9. Constitutional Law § 28— claim that witness recanted testimony unfounded**

There was no merit to defendant's claim that her murder conviction was obtained in violation of her rights under the Fourteenth Amendment to the United States Constitution because the State's principal witness recanted his testimony which helped convict defendant since the affidavit submitted to support the claim showed that the witness was not recanting his testimony at all.

**10. Constitutional Law § 30— informing defendant of charge reduction arrangements made with State's witness**

The record did not support defendant's claim that her lawyer was not provided with information about various concessions the prosecutor made to the State's chief witness in exchange for his testimony. Even if defendant did not receive the information in written form within a reasonable time before trial, her only remedy under G.S. 15A-1054(c) was to move for a recess, not suppression of the testimony.

**11. Criminal Law § 138— conspiracy to commit murder—sentence imposed exceeding maximum**

Under G.S. 14-1.1(b) the trial court erred in giving defendant a 10-year prison sentence for conspiracy to commit murder since the maximum sentence which can be imposed is 3 years imprisonment.

DEFENDANT Cleaster Woods appeals directly to this Court as a matter of right under G.S. 7A-27(a) (1981) from the judgment of *Brown, Judge,* entered 2 December 1981, which imposed a life sentence. Defendant was tried during the 21 November 1981 Session of Superior Court, CRAVEN County. The life sentence was imposed after a jury found defendant guilty of first-degree murder. Defendant was also convicted of conspiring to commit murder, a felony, and given a ten-year prison term on that conviction. On 24

May 1982 we allowed defendant's motion under G.S. 7A-31(b) (1981) to bypass the Court of Appeals on the conspiracy to commit murder conviction.

Defendant raises a potpourri of contentions in this appeal. Some of the issues we address below are: (1) the sufficiency of the evidence supporting defendant's convictions; (2) the trial court's omission of a jury instruction on the defense of abandonment; (3) the constitutionality of G.S. 15A-626 (1978); (4) the sufficiency of the indictments; (5) the trial court's denial of a motion to sequester the witnesses; and (6) the trial court's limiting of cross-examination of the State's principal witness.

*Rufus L. Edmisten, Attorney General, by Charles M. Hensey, Assistant Attorney General, for the State.*

*Reginald L. Frazier and Bowen C. Tatum, Jr., for defendant.*

CARLTON, Justice.

I.

Defendant, Cleaster Woods, was indicted for the murder of her husband, Leinster Woods, and for conspiring with Danny Lee Nichols to kill Leinster Woods. At the guilt-innocence phase of the trial Nichols, the State's chief witness, testified as follows under a plea arrangement:

Nichols and defendant were lovers. About two weeks before defendant's husband was killed, defendant talked to Nichols about a life insurance policy which would pay $104,000 upon her husband's death. Nichols stated that defendant offered him a portion of the insurance proceeds—$10,000—to find someone who would "rig up" her husband's car so that he would be blown up. When Nichols was unable to find anyone to "rig up" the car, defendant suggested Nichols find a "hit man" who would shoot her husband while he was driving. Again, she offered Nichols $10,000 in life insurance proceeds for his help. When Nichols was unable to find a "hit man," defendant proposed a third plan. She asked Nichols to do the shooting himself. Her scheme, according to Nichols, was as follows:

After Leinster Woods had fastened all the locks on the door and gone to bed, defendant would unlock all the locks on the door

except one so that it would be easier for Nichols to enter the house and kill defendant's husband. Nichols stated defendant then would "grab her kid and wait five or ten minutes after we get out of sight and then holler 'help, someone killed my husband.' "

In proposing this plan, defendant offered Nichols $30,000 in insurance proceeds and told Nichols' friend, Craig Davis, she would give him $5,000 if he would accompany Nichols when he carried out the plan.

Nichols and Davis went to defendant's home on Tuesday night, 25 August 1981. Nichols stated that while trying to find something with which to cut a screen, "the door slammed and the car took off." Nichols, not knowing who drove off in Leinster Woods' car, left the scene with Davis. Nichols returned to defendant's house early the next morning with Davis, waited beside the house, and shot defendant's husband when he walked out the front door to go to work. The State and defendant stipulated that Leinster Woods died on 26 August 1981 as a result of a gunshot wound through the head.

One witness testified that defendant had said that "sometimes that man [Leinster Woods] makes me so mad I could kill him." Another witness testified that on the day before Leinster Woods was shot defendant spoke about having had a fight with her husband and that Leinster Woods "was good as dead." She had remarked to one other witness that she would share the proceeds from a large insurance policy with him if he would kill her husband.

Defendant did not offer any evidence.

The jury found defendant guilty of both charges. A sentencing hearing was held and the jury found that the aggravating circumstance—that the murder was committed for monetary gain—outweighed the mitigating circumstances. However, it also found that the aggravating factor was not sufficiently substantial to call for imposition of the death penalty and recommended a sentence of life imprisonment. Defendant was sentenced as noted above.

## II.

Defendant presents several issues in this appeal. We will discuss each briefly in turn.

A.

[1] We address first defendant's contention that the evidence was not sufficient to support convictions of first-degree murder and conspiracy to commit murder, and, therefore, that the trial judge erred in submitting the case to the jury.

In determining whether the evidence is sufficient to go to the jury, the trial court is to ascertain whether there is substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense. If so, the evidence is sufficient, as a matter of law, to go to the jury. *State v. Earnhardt*, 307 N.C. 62, 63, --- S.E. 2d ---, --- (1982); *State v. Powell*, 299 N.C. 95, 98, 261 S.E. 2d 114, 117 (1980); *State v. Roseman*, 279 N.C. 573, 580, 184 S.E. 2d 289, 294 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E. 2d 164, 169 (1980). The trial court is to determine whether the evidence allows a "reasonable inference" to be drawn as to the defendant's guilt. *State v. Thomas*, 296 N.C. 236, 244-45, 250 S.E. 2d 204, 208-09 (1978).

In the case at bar, defendant was tried for first-degree murder. Although Nichols' testimony, as outlined above, indicates defendant solicited Nichols' assistance in carrying out the killing, defendant was not present when her husband was shot. Under these circumstances, a defendant is considered an accessory before the fact of murder, not a principal in the crime. The guilt and sentencing distinctions formerly made between an accessory before the fact and a principal in the felony have been abolished, however. G.S. 14-5.2 (1981). In responding to this Court's holding in *State v. Small*, 301 N.C. 407, 272 S.E. 2d 128 (1980), which had recognized those distinctions, the General Assembly enacted G.S. 14-5.2 (1981). That statute provides: "Every person who heretofore would have been guilty as an accessory before the fact to any felony shall be guilty and punishable as a principal to that felony." After enacting the new statute, the legislature repealed G.S. 14-5, G.S. 14-5.1 and G.S. 14-6, the statutes which previously had applied to those charged as accessories before the fact of

felony.[1] The language of G.S. 14-5.2 indicates that the essential elements of the offense have not changed. The legislature merely abolished the difference in guilt and sentencing treatment between the principal to the felony and an accessory in repealing G.S. 14-5, G.S. 14-5.1 and G.S. 14-6 and replacing them with G.S. 14-5.2. Therefore, cases decided under the repealed statutes delineating the essential elements of accessory before the fact of felony are applicable to cases brought under the new statute. The elements of accessory before the fact of felony are: (1) that defendant counseled, procured or commanded the principal to commit the offense; (2) that defendant was not present when the principal committed the offense; and (3) that the principal committed the offense. *State v. Sauls*, 291 N.C. 253, 256-57, 230 S.E. 2d 390, 392 (1976), *cert. denied*, 431 U.S. 916, 97 S.Ct. 2178, 53 L.Ed. 2d 226 (1977).

In this case, there was substantial evidence of each of the three elements. The State's chief witness, Danny Nichols, testified to the first element: Cleaster Woods, defendant, agreed to pay Nichols, the principal, $30,000 out of the insurance proceeds if Nichols would kill defendant's husband. The jury could reasonably infer the second element: defendant was not present when Nichols shot her husband because Nichols did not mention she was there. Finally, Nichols testified to the third element: he admitted he was the principal in this first-degree murder—the one who shot the victim after lying in wait for him. Therefore, defendant was not a principal. The State's evidence, thus, presents substantial evidence of each of the essential elements of accessory before the fact of murder. The trial court also is to determine whether there was substantial evidence of defendant's being the perpetrator of the offense. Nichols testified that he and defendant were lovers, and that she was the person who offered him a portion of the proceeds from the insurance policy if he killed her husband. In so doing Nichols presented sufficient evidence of defendant's identity as the perpetrator of the offense.

1. The General Assembly repealed G.S. 14-5, G.S. 14-5.1 and G.S. 14-6 by Act of 25 June 1981, ch. 686, § 2, 1981 N.C. Sess. Laws 984. The legislature enacted G.S. 14-5.2 by Act of 25 June 1981, ch. 686, § 1, 1981 N.C. Sess. Laws 984.

### B.

[2] We also find that the evidence of conspiracy to commit murder was sufficient to go to the jury. The essential elements of that crime are: (1) an agreement between two or more people; (2) to do an unlawful act, specifically, to murder another. See *State v. Abernathy*, 295 N.C. 147, 164, 244 S.E. 2d 373, 384 (1978).

Abundant evidence of both elements of conspiracy to commit murder are found throughout the record. One example will suffice. On direct examination Nichols testified to the effect that he agreed with defendant that for $10,000 in insurance proceeds he would find a "hit man" to kill defendant's husband.

The trial court properly allowed the jury to consider defendant's guilt of both crimes.

### C.

[3] Defendant also contends that the trial court erred in failing to instruct the jury on the defense of abandonment of the criminal enterprise. Under Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure, 303 N.C. 713, 716-17 (1981) (amending 287 N.C. 669, 699 (1975) ), defendant may not assign this omission as error. The rule states that "[n]o party may assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection . . . ." The rule is applicable to all cases tried on or after 1 October 1981. Defendant's trial began on 30 November 1981. She is barred, therefore, from claiming this omission as error. Even if we were to assume that Rule 10(b)(2) did not apply, a close examination of the record does not disclose any evidence that defendant abandoned the enterprise.

### D.

[4] Defendant claims that her convictions are based on invalid indictments because G.S. 15A-626 (1978), the statute "placing restrictions on any independent powers the grand jury may possess," Official Commentary to G.S. 15A-626 (1978), is unconstitutional. In *State ex rel. Comm'r of Ins. v. North Carolina Rate Bureau*, 300 N.C. 381, 269 S.E. 2d 547 (1980), this Court reiterated the well-established rule in this jurisdiction that "the

constitutionality of a statute will not be reviewed in the appellate court unless it was raised and passed upon in the proceedings below . . . ." *Id.* at 428, 269 S.E. 2d at 577; *City of Durham v. Manson,* 285 N.C. 741, 743, 208 S.E. 2d 662, 664 (1974). This is in accord with decisions of the United States Supreme Court. *Irvine v. California,* 347 U.S. 128, 129-30, 74 S.Ct. 381, 98 L.Ed. 561, 567 (1954); *Edelman v. California,* 344 U.S. 357, 358-59, 73 S.Ct. 293, 294-95, 97 L.Ed. 387, 390-91 (1953). Defendant raises this issue for the first time on appeal. Because she failed to ask the trial court to pass upon this question, we must decline to do so now.

### E.

[5] Defendant also claims that the murder indictment was insufficient in a constitutional sense because it failed to give notice that the first-degree murder charge carried with it the possibility that she might receive the death penalty upon conviction. Defendant claims a "constitutionally adequate indictment requires allegations of aggravating circumstances to fulfill constitutional demands of pretrial notice . . . ." In *State v. Taylor,* 304 N.C. 249, 256-58, 283 S.E. 2d 761, 767-68 (1981), we held that the United States Constitution does not require such notice be given. These assignments of error are overruled.

### F.

[6] Defendant contends the trial court's denial of her motion to sequester the witnesses was reversible error. We disagree. The rule in this State is that a motion to sequester witnesses is addressed to the discretion of the trial court, and the court's denial of the motion will not be disturbed in the absence of a showing of abuse. *E.g., State v. Tatum,* 291 N.C. 73, 85, 229 S.E. 2d 562, 569 (1976); *State v. Davis,* 290 N.C. 511, 534, 227 S.E. 2d 97, 111 (1976). Defendant's sole reason for the request was "because of the seriousness and gravity of the case." Defendant made absolutely no showing that the trial court abused its discretion and we perceive none. The trial court's ruling on the motion is without error.

### G.

[7] Defendant contends that the trial court's limiting of defendant's cross-examination of the State's chief witness, Danny Nichols, was reversible error. The long-standing rule in this

jurisdiction is that the scope of cross-examination is largely within the discretion of the trial judge, and his rulings thereon will not be held in error in the absence of a showing that the verdict was improperly influenced by the limited scope of the cross-examination. *E.g., State v. McPherson,* 276 N.C. 482, 487, 172 S.E. 2d 50, 54 (1970); *State v. Edwards,* 228 N.C. 153, 154, 44 S.E. 2d 725, 726 (1947). Defendant makes absolutely no showing that the verdict was improperly influenced by any of the trial court's curtailments of her cross-examination of Nichols. Indeed, the record indicates that such a showing would have been impossible. For example, defendant claims she was prejudiced when not allowed to continue a line of questioning in which defense counsel asked Nichols if he had seen or talked with any member of defendant's family since his own arrest. Nichols stated that he had seen defendant's son once. The exchange between Nichols and defense counsel went as follows:

Q: And did you speak with him [defendant's son]?

A: I spoke with him.

Q: And what did you say, if anything?

A: I just told him everything would be all right.

Q: Did you say "Hello, how are you?"

[State]: Well, objection.

THE COURT: Sustained.

Q: What did you say?

THE COURT: Sustained.

A: I said everything is going to be all right.

THE COURT: I sustained the objection.

DEFENDANT'S EXCEPTION NUMBER 9.

As shown, the line of questioning itself was irrelevant, and the question to which the State objected was irrelevant to the line of questioning. Indeed, Nichols answered the question anyway. We fail to see how defendant was harmed. Suffice it to say that the other exceptions made on this ground are as meritless. We find no error here.

## H.

[8] Defendant contends that the prosecutor's statements made in his closing argument during the guilt phase of the trial constituted prejudicial error. Where, immediately upon a defendant's objection to an improper remark made by the prosecutor in his closing argument, the trial court instructs the jury to disregard the offending statement, the impropriety is cured. *E.g., State v. Sanders,* 303 N.C. 608, 617-18, 281 S.E. 2d 7, 12-13, *cert. denied,* --- U.S. ---, 102 S.Ct. 523, 70 L.Ed. 2d 392 (1981); *State v. Martin,* 294 N.C. 253, 260, 240 S.E. 2d 415, 420-21 (1978).

In this case the State made the following improper arguments to the jury: ". . . I think you should also know that you should convict that woman of first degree murder and conspiracy and should she be sentenced to a sentence of life imprisonment, she won't spend the rest of her life in a _____." The prosecutor also stated: "You know, when is the last time anybody went to the gas chamber in this state? Twenty years. People in this state don't believe you go to the gas chamber on murder and maybe you don't." Defense counsel objected to each argument. In both instances the trial court sustained defense counsel's objections and immediately instructed the jury to disregard the improper portion of the State's closing argument. Thus, the improprieties were cured and possible prejudice to defendant was avoided with each instruction to disregard the improper statement.

## III.

This Court docketed defendant's appeal on 27 April 1982. Since that time, defendant has filed in this Court three motions for appropriate relief. We dispose of them here. G.S. 15A-1418 (1978). Since the motions were made more than ten days after entry of judgment, grounds for relief are limited to those listed in G.S. 15A-1415 (Cum. Supp. 1981).

## A.

[9] In her first motion for appropriate relief, filed 21 May 1982, defendant claims that her murder conviction was obtained in violation of her rights under the fourteenth amendment to the United States Constitution because the State's principal witness,

Danny Nichols, has recanted the testimony which helped convict defendant. This claim is unfounded. The affidavit submitted to support this claim, a copy of Nichols' petition for relief, shows that Nichols was not recanting his testimony; he was merely claiming (1) that his guilty plea was coerced because he was confronted with the possibility that he might be tried for first-degree murder and perhaps sentenced to death upon conviction; and (2) that he was denied effective assistance of counsel because his lawyer did not get him a better sentence. Nichols' claims do not amount to a recantation of his testimony at trial. Defendant's claim is, therefore, without merit.

### B.

[10] Defendant's second motion, filed 25 June 1982, attacks the validity of her murder conviction, claiming that her lawyer was not provided with information about various concessions the prosecutor made to Danny Nichols in exchange for his testimony. G.S. 15A-1054 (1978). The record does not support this claim. The trial transcript shows defense counsel was informed at some time before trial of the charge reduction arrangements made with Nichols. Indeed, defense counsel stated before trial he knew of Nichols' plea of guilty to second-degree murder. If defendant did not receive the information in written form within a reasonable time before trial, her only remedy under G.S. 15A-1054(c) was to move for a recess, not suppression of the testimony. *State v. Lester*, 294 N.C. 220, 228-29, 240 S.E. 2d 391, 398-99 (1978).

Defendant also submits with this second motion several letters Nichols wrote to defendant which we find not relevant to the case at all.

### C.

Defendant's last motion, filed 19 October 1982, repeats the claims made in the first two motions and adds the contention that based on our decision in *State v. Small*, 301 N.C. 407, 272 S.E. 2d 128 (1980), she cannot be convicted of first-degree murder under G.S. 14-5.1 because she was only an accessory before the fact. This contention is meritless because defendant was tried after the effective date of G.S. 14-5.2, the statute which replaced G.S. 14-5, G.S. 14-5.1 and G.S. 14-6, and abolished the guilt and punishment distinction, recognized in *Small*, between an accessory before the

fact to a felony and the principal in a felony. G.S. 14-5.2 is applicable to all offenses committed on or after 1 July 1981. Defendant's husband was murdered 26 August 1981.

## IV.

[11] In reviewing the record, we note that defendant received a ten-year prison sentence for conspiracy to commit murder. Although conspiracy to commit a felony is itself a felony, *State v. Abernethy*, 220 N.C. 226, 231-32, 17 S.E. 2d 25, 28 (1941), it is not assigned by statute to any particular felony class. Therefore, under G.S. 14-1.1(b) (1981), it is a Class J felony. As such, the maximum sentence which can be imposed is three years' imprisonment, not ten. Therefore, we remand the conspiracy conviction to the superior court for resentencing.

The order committing defendant to ten years in prison for conspiracy to commit murder is

Vacated.

The case is

Remanded for resentencing on conspiracy charge.

In the trial of this defendant on both charges we find

No error.