TYSON, Judge.
 

 *307
 
 Eric Jonathan Cox ("Defendant") appeals from his convictions of second-degree murder, felonious serious injury by vehicle, driving while impaired, and failure to comply with a driver's license restriction. We find no error.
 

 *308
 

 I. Background
 

 A. Evidence Presented at Trial
 

 Hluon Siu finished working her second shift at Metrolina Greenhouse in Charlotte at approximately 1:00 a.m. on Monday, 28 November 2011. She picked up her four-year-old son, Khai, from his father's home at approximately 2:00 a.m. Ms. Siu was driving a white 2004 Nissan Altima sedan. Khai was seated in a booster seat in the rear passenger seat.
 

 Ms. Siu was driving outbound on The Plaza, which has two lanes of outbound traffic, two lanes of inbound traffic, and a left turn lane. At 2:37 a.m., Ms. Siu was driving through a green light at the intersection of East Sugar Creek Road, when her vehicle was struck on the driver's side by a 2000 gray Chevrolet Tahoe driven by Defendant. The evidence tended to show Defendant, who was traveling on Sugar Creek Road, failed to stop at a red light prior to entering the intersection. Ms. Siu was killed almost immediately by the impact.
 

 Carmen Hayes witnessed the crash and testified Defendant's vehicle "flew across" the intersection. Hayes opined Defendant's vehicle was traveling between fifty and sixty miles per hour, even though the posted speed limit at the intersection was thirty-five miles per hour. Hayes was clearly able to see the traffic signals at the intersection, and testified the light was green in Ms. Siu's lane of travel. Hayes testified Defendant got out of his vehicle, appeared to be uninjured, and "he just kind of stood there" and did "absolutely nothing." She stated, "He never once asked is she okay, he was not apologetic, he stood there.... No remorse."
 

 Pamela Pittman and her daughter also witnessed the crash, and they both testified the light in Ms. Siu's lane of travel was green. Pittman immediately went to Ms. Siu's overturned vehicle to render assistance. She testified Defendant stood beside his vehicle and walked around with his hands in his pockets.
 

 Charlotte-Mecklenburg Police Sergeant David Sloan was assigned to the Department's Major Crash Unit. At approximately 2:45 a.m., Sergeant Sloan contacted Sergeant Jesse Wood, Officer Jonathan Cerdan, and Detective Matthew Sammis to assist in investigation of the crash. The three officers arrived at the scene, where several other officers were already present.
 

 Defendant was seated in the backseat of a patrol vehicle. Officer Cerdan was assigned to evaluate Defendant for impairment. Officer Cerdan had arrested Defendant for driving
 
 *695
 
 while impaired in 2009 and recognized his personalized license plate. Officer Cerdan observed Defendant's eyes
 
 *309
 
 to be red, watery and bloodshot. A strong odor of alcohol emanated from Defendant's breath. Defendant initially denied drinking alcohol, but later stated to Officer Cerdan he drank a glass of wine at 9:00 p.m. and had taken "DayQuil and NyQuil" earlier that day.
 

 Officer Cerdan performed field sobriety testing on Defendant. On the horizontal gaze nystagmus test, Defendant manifested all six clues of impairment. On the walk-and-turn test, Defendant stopped for re-instruction after the first nine steps, took an improper turn, and displayed difficulty maintaining balance. On the one leg stand test, Defendant swayed and used his arms for balance. After completing the field sobriety tests, Officer Cerdan formed the opinion that Defendant's mental and physical faculties were appreciably impaired by alcohol. Defendant was arrested for driving while impaired and for failure to comply with his .04 blood alcohol concentration restriction on his driver's license.
 

 Officer Cerdan transported Defendant to Carolinas Medical Center-Mercy Hospital for chemical analysis of Defendant's blood. They arrived at the hospital at 4:33 a.m. Defendant signed the implied consent rights form and did not exercise his right to contact an attorney or request a witness to view the testing procedure. The first blood sample was drawn by a registered nurse from Defendant at 4:55 a.m. A subsequent chemical analysis of Defendant's blood sample by the Charlotte-Mecklenburg Police crime lab revealed a .17 blood alcohol concentration.
 

 Defendant was transported to the Mecklenburg County Law Enforcement Center and interviewed by Officer Cerdan and Detective Sammis. Defendant was read Miranda rights at 6:15 a.m. and waived his right to have an attorney present during questioning. At the conclusion of the interview, Detective Sammis charged Defendant with second-degree murder and felonious serious injury by vehicle.
 

 At the conclusion of his investigation of the crash, Detective Sammis determined that Defendant was traveling on East Sugar Creek Road and failed to stop for a properly working red light at its intersection with The Plaza. Defendant hit Ms. Siu's vehicle while traveling approximately 48.6 miles per hour. Ms. Siu was driving through a green light on The Plaza at approximately 36.8 miles per hour at the time Defendant struck her vehicle. There was no evidence of any "pre-impact braking" from tire marks on the road.
 

 Detectives retrieved an iPhone from the driver's side floorboard of Defendant's vehicle. One of the text messages stored in Defendant's phone was sent about fourteen hours prior to the crash, and stated, "I
 

 *310
 
 might drink a little more than I should tonight." Defendant did not offer any evidence at trial.
 

 B Appellate History
 

 On 16 September 2014, the jury convicted Defendant of all charges. The trial court sentenced Defendant to an active sentence of 175 to 219 months for the second-degree murder conviction, 5 days for the operation of a vehicle in violation of a license restriction, and a consecutive sentence of 33 to 49 months for the conviction of felonious serious injury by vehicle. Defendant appealed to this Court.
 

 On appeal, Defendant argued,
 
 inter alia
 
 , "that his statutory and constitutional rights were violated by an unnecessary seven-hour delay between his arrest and appearance before a magistrate, requiring the trial court to dismiss the charges."
 
 State v. Cox
 
 , No. 15-244, --- N.C.App. ----,
 
 785 S.E.2d 186
 
 ,
 
 2016 WL 1320179
 
 at *1, 2016 N.C. App. LEXIS 149 at *1 (N.C. Ct. App., Feb. 16, 2016) ("
 
 Cox I
 
 ").
 

 In an unpublished opinion filed 16 February 2016, this Court determined "the trial court's order denying Defendant's motion to dismiss failed to resolve all material issues of fact and law presented in that motion." We vacated the order and remanded to the trial court "for further findings and conclusions."
 
 Id
 
 . On remand, the trial court entered an amended order denying Defendant's motion to dismiss on 27 April 2016.
 

 Because this Court vacated the order denying Defendant's motion to dismiss and remanded, the remaining issues Defendant raised on appeal in
 
 Cox I
 
 were not ruled upon. Defendant appeals from the amended
 
 *696
 
 order, entered on remand, and also raises the same issues he asserted in his previous appeal.
 

 II. Jurisdiction
 

 Jurisdiction lies in this Court from final judgment of the superior court entered upon the jury's verdict pursuant to N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a) (2015).
 

 III. Issues
 

 Defendant argues the trial court erred by: (1) denying his motion to dismiss due to the delay in bringing him before a magistrate; (2) preventing him from cross-examining a witness regarding the contents of a verified complaint; (3) excluding evidence that the child victim was not properly restrained in a child seat; (4) instructing the jury on proximate cause; and (4) instructing the jury on a lesser standard of proof than required by statute.
 

 *311
 

 IV. Denial of Defendant's Motion to Dismiss
 

 Defendant argues the trial court prejudicially erred by denying his motion to dismiss, because the delay in bringing him before a judicial officer and the magistrate's error in holding him without bond violated his constitutional rights. We disagree.
 

 A. Standard of Review
 

 "Dismissal of charges for violations of statutory rights is a drastic remedy which should be granted sparingly. Before a motion to dismiss should be granted ... it must appear that the statutory violation caused irreparable prejudice to the preparation of defendant's case."
 
 State v. Labinski
 
 ,
 
 188 N.C.App. 120
 
 , 124,
 
 654 S.E.2d 740
 
 , 742-43 (citation, quotation marks, and italics omitted),
 
 disc. review denied
 
 ,
 
 362 N.C. 367
 
 ,
 
 661 S.E.2d 889
 
 (2008).
 

 The standard of review on appeal of the denial of a motion to dismiss is "whether there is competent evidence to support the findings and the conclusions. If there is a conflict between the state's evidence and defendant's evidence on material facts, it is the duty of the trial court to resolve the conflict and such resolution will not be disturbed on appeal."
 
 State v. Lewis
 
 ,
 
 147 N.C.App. 274
 
 , 277,
 
 555 S.E.2d 348
 
 , 351 (2001) (internal citations and quotation marks omitted). Findings of fact which are not challenged "are presumed to be correct and are binding on appeal. We [therefore] limit our review to whether [the unchallenged] facts support the trial court's conclusions."
 
 State v. Eliason
 
 ,
 
 100 N.C.App. 313
 
 , 315,
 
 395 S.E.2d 702
 
 , 703 (1990) (citations omitted).
 

 B. Statutory Requirements upon Arrest
 

 N.C. Gen. Stat. § 15A-511(a)(1) (2015) provides: "A law-enforcement officer making an arrest ... must take the arrested person without unnecessary delay before a magistrate as provided in G.S. 15A-501." N.C. Gen. Stat. § 15A-501 provides:
 

 Upon the arrest of a person, with or without a warrant, ... a law enforcement officer:
 

 (2) Must, with respect to any person arrested without a warrant and, for purpose of setting bail, with respect to any person arrested upon a warrant or order for arrest, take the person arrested before a judicial official without unnecessary delay.
 

 ....
 

 *312
 
 (5) Must without unnecessary delay advise the person arrested of his right to communicate with counsel and friends and must allow him reasonable time and reasonable opportunity to do so.
 

 N.C. Gen. Stat. § 15A-501(2), (5) (2015).
 

 Our Supreme Court has held that "[u]nquestionably, the failure of law enforcement personnel in complying with the provisions of [ N.C. Gen. Stat. § 15A-511 and N.C. Gen. Stat. § 15A-501 ] can result in the violation of a person's constitutional rights."
 
 State v. Reynolds
 
 ,
 
 298 N.C. 380
 
 , 398,
 
 259 S.E.2d 843
 
 , 854 (1979),
 
 cert. denied
 
 ,
 
 446 U.S. 941
 
 ,
 
 100 S.Ct. 2164
 
 ,
 
 64 L.Ed.2d 795
 
 (1980) ;
 
 see also
 
 N.C. Gen. Stat. § 15A-954(a)(4) (2015) ("The court on motion of the defendant must dismiss the charges stated in a criminal pleading if it determines that ... [t]he defendant's constitutional rights have been flagrantly violated and there is such irreparable prejudice to the defendant's preparation of his case that there is no remedy but to dismiss the prosecution.")
 

 Defendant contends he was not taken before a magistrate, as required by N.C. Gen. Stat. § 15A-501(2), or advised of his right to
 
 *697
 
 communicate with friends as required by N.C. Gen. Stat. § 15A-501(5), without unnecessary delay.
 

 The crash occurred at 2:37 a.m. Officer Cerdan arrived at the scene between 3:15 and 3:20 a.m. and conducted field sobriety testing on Defendant. Defendant was arrested without a warrant for driving while impaired and violation of his .04 BAC driver's license restriction.
 

 Upon remand, the trial court made the following findings of fact in its amended order denying Defendant's motion to dismiss:
 

 7. Officer Cerdan informed Sgt. Sloan of his findings and drove Defendant to CMC-Mercy hospital to have his blood drawn. Upon arrival at the hospital around 4:33 am, Officer Cerdan advised the Defendant of his rights. Defendant signed the rights form and did not ask to have a witness or an attorney present. A telephone was available to Defendant in the hospital room. His blood was drawn at 4:55 am. Defendant was examined by a physician and cleared. Cerdan collected the evidence and completed the discharge paperwork.
 

 8. Two vials of blood were drawn from Defendant. One vial was tested by a chemical analyst and the second was
 
 *313
 
 preserved for further testing if needed. Defendant has not requested that the second vial of blood be tested.
 

 9. He was then taken to the Law Enforcement Center where they waited for the lead Detective Sammis to arrive and interview Defendant. Sammis arrived at about 5:52 a.m.
 

 10. Detective Sammis began the interview with Defendant at 6:15 am by reading the Miranda rights form. Defendant initialed each right indicating that he understood, signed the waiver of rights form and agreed to make a statement without the presence of a lawyer. The interview concluded after an hour. Defendant was then charged with second degree murder and felony serious injury by vehicle.
 

 11. Detective Sammis prepared the arrest affidavit, checked Defendant's criminal history and driving history. Officer Cerdan then transported Defendant to the Mecklenburg County jail for processing at 9:35 am. He was brought before a magistrate at approximately 11:11 am. Prior to seeing the magistrate, Defendant made a phone call to a friend. He did not ask the friend to come to the jail until after he knew the conditions of his release.
 

 12. The magistrate set bond on each of the Defendant's charges except the second degree murder charge. The magistrate may have misconstrued the Bond policy of "no recommendation" on a second degree murder charge, as "no bond". The State concedes and the Court finds that the failure to set bond on the murder charge was a violation of NCGS Sec. 15A-533(b).
 

 13. The Defendant had a first appearance hearing via video conference on November 29, 2011. Bond was set at $350,000 secured on the second degree murder case. He was represented by counsel at that hearing.
 

 14. Defendant was released on bond several days after his arrest.
 

 Based upon these findings, the trial court concluded in the amended order:
 

 1. The Defendant was advised of his rights to have family, friends or an attorney present twice before he appeared
 
 *314
 
 before the Magistrate. He indicted [sic] at the hospital and when interviewed by Detective Sammis, that he understood his rights. He did not ask for a witness or an attorney. Defendant was not denied his right to consult with family, friends, or an attorney. There was no violation of NCGS § 15A-501(5) ;
 

 2. The time spent in taking Defendant from the scene of the wreck to the hospital for medical assessment and blood draw, then the Law Enforcement Center where he was interviewed by a detective; and from there to the jail before being presented to the Magistrate did not constitute an unnecessary delay as to substantially violate Defendant's statutory right to be taken before a Magistrate without delay following his arrest at 4:00 a.m. There was no violation of NCGS § 15A-501(2), nor has Defendant demonstrated that he was prejudiced by the passage of time from his arrest until his appearance before the Magistrate.
 

 3. While the Magistrate violated the Defendant's right to pre-trial release; the Defendant has failed to establish that he suffered
 
 *698
 
 irreparable prejudice as a result of the Magistrate's failure[.]
 

 Defendant contends the relevant delay of time is nine hours, the period of time between the crash and his appearance before the magistrate. However, the pertinent time span is calculated between Defendant's arrest at approximately 4:00 a.m. and his appearance before a magistrate, which his approximately seven hours.
 
 See
 
 N.C. Gen. Stat. § 15A-501.
 

 C.
 
 Hill
 
 and
 
 Knoll
 

 Defendant argues this case is controlled by
 
 State v. Hill
 
 ,
 
 277 N.C. 547
 
 ,
 
 178 S.E.2d 462
 
 (1971). In
 
 Hill
 
 , the defendant was arrested for driving while impaired at approximately 11:00 p.m. and "was not permitted to telephone his attorney until after the breathalyzer testing and photographic procedures were completed and the warrant was served."
 
 Id
 
 . at 553,
 
 178 S.E.2d at 466
 
 . The defendant called an attorney, who was also a relative. The attorney's request to see the defendant "was peremptorily and categatorically [sic] denied."
 
 Id
 
 . From the time of the defendant's arrest until he was released about 7:00 a.m. the following morning "only law enforcement officers had seen or had access to him."
 
 Id
 
 .
 

 *315
 
 Our Supreme Court explained that, because "[i]ntoxication does not last," if a person accused of driving while impaired "is to have witnesses for his defense, he must have access to his counsel, friends, relatives, or some disinterested person within a relatively short time after his arrest."
 
 Id
 
 . The Court concluded, "when an officer's blunder deprives a defendant of his only opportunity to obtain evidence which might prove his innocence, the State will not be heard to say that such evidence did not exist."
 
 Id
 
 . at 555,
 
 178 S.E.2d at 467
 
 .
 

 The Court held the defendant
 

 was denied his constitutional and statutory right to communicate with both counsel and friends at a time when the denial deprived him of any opportunity to confront the State's witnesses with other testimony. Under these circumstances, to say that the denial was not prejudicial is to assume that which is incapable of proof.
 

 Id
 
 . at 554,
 
 178 S.E.2d at 466
 
 .
 

 The General Assembly amended North Carolina's driving while impaired statutes after the Supreme Court's opinion in
 
 Hill
 
 . Under the current version of
 
 N.C. Gen. Stat. § 20-138.1
 
 (a)(2), a defendant may be convicted of DWI if his alcohol concentration, "at any relevant time after the driving," is .08 or more.
 
 N.C. Gen. Stat. § 20-138.1
 
 (a)(2) (2015). When
 
 Hill
 
 was decided, the statute provided that a 0.10 alcohol concentration merely created
 
 an inference
 
 of intoxication
 

 The amendment was addressed in
 
 State v. Knoll
 
 ,
 
 322 N.C. 535
 
 ,
 
 369 S.E.2d 558
 
 (1988). The
 
 Knoll
 
 Court held, under the current statute, "denial of access is no longer inherently prejudicial to a defendant's ability to gather evidence in support of his innocence in every driving while impaired case" since an alcohol concentration of .08 is sufficient to show impairment, on its face, to convict the defendant.
 
 Id
 
 . at 545,
 
 369 S.E.2d at 564
 
 (citation omitted). The Court held "in those cases arising under NCGS § 20-138.1(a)(2), prejudice will not be assumed to accompany a violation of defendant's statutory rights, but rather, defendant must make a showing that he was prejudiced in order to gain relief."
 
 Id
 
 .
 

 D. Prejudice
 

 The evidence showed and the trial court found that Defendant was arrested at the scene and transported to the hospital. At 4:33 a.m., he was advised of his rights and did not request the presence of a witness or attorney. A telephone was available to him. Two vials of blood were
 
 *316
 
 drawn with Defendant's consent. One was preserved for further testing, if needed. Defendant did not request further testing of the blood sample. He was transported from the hospital, and arrived at the Law Enforcement Center at 5:21 a.m. to be interviewed. Defendant waived his
 
 Miranda
 
 rights, and agreed to make a statement without the presence of an attorney. Prior to his appearance before the magistrate, Defendant telephoned a friend, but did not ask the friend to come to the jail.
 
 *699
 
 Unlike in
 
 Hill
 
 , the evidence and findings indicate Defendant was afforded multiple opportunities to have witnesses or an attorney present pursuant to N.C. Gen. Stat. § 15A-501(5), which he elected not to exercise. Defendant cannot now assert he was prejudiced to gain relief, either by the absence of a witness or attorney or by the time period between his arrest and appearance before a magistrate.
 
 See
 

 Knoll
 
 ,
 
 322 N.C. at 545
 
 ,
 
 369 S.E.2d at 564
 
 . Defendant's arguments are overruled.
 

 IV. Limitation on Defendant's Cross-Examination of Cooke
 

 Defendant argues the trial court erred by preventing him from cross-examining Christopher Cooke ("Cooke") regarding the contents of a verified complaint Cooke filed against Defendant and the estate of Ms. Siu on behalf of himself and Khai. We disagree.
 

 A. Standard of Review
 

 "The long-standing rule in this jurisdiction is that the scope of cross-examination is largely within the discretion of the trial judge, and his rulings thereon will not be held in error in the absence of a showing that the verdict was improperly influenced by the limited scope of the cross-examination."
 
 State v. Woods
 
 ,
 
 307 N.C. 213
 
 , 220-21,
 
 297 S.E.2d 574
 
 , 579 (1982).
 

 B. Exclusion of Evidence Intended to Show Bias
 

 Cooke is Khai's father. Khai suffered extensive injuries during the crash, which included a severe and traumatic brain injury, a small spleen laceration, and ligament injuries and a bone fracture in his neck. Cooke was called by the State as a witness "simply to talk about some biographical information concerning [Ms.] Siu, and also Khai, and also to talk about [Khai's] injuries." The State filed a motion
 
 in limine
 
 , which sought to prevent Defendant from cross-examining Cooke concerning the contents of the verified civil complaint. The trial court granted the State's motion and prohibited Defendant from cross-examining Cooke regarding the allegations in the complaint, or about any bias that might result from Cooke's financial interest in Defendant's prosecution.
 

 *317
 
 Cooke's testimony on direct examination was limited to factual information regarding his family and Khai's injuries. The State did not elicit any testimony from him regarding the cause of the crash. Cooke offered no testimony that would tend to sway the jury in deciding Defendant's guilt. " 'The trial judge may and should rule out immaterial, irrelevant, and incompetent matter.' "
 
 State v. Jacobs
 
 ,
 
 172 N.C.App. 220
 
 , 228,
 
 616 S.E.2d 306
 
 , 312 (2005) (quoting
 
 State v. Stanfield
 
 ,
 
 292 N.C. 357
 
 , 362,
 
 233 S.E.2d 574
 
 , 578 (1977) ). Defendant has failed to show the trial court's decision to limit the scope of his cross-examination influenced the jury's verdict.
 
 See
 

 Woods
 
 ,
 
 307 N.C. at 220-21
 
 ,
 
 297 S.E.2d at 579
 
 . This argument is without merit and is overruled.
 

 V. Jury Instructions
 

 A. Standard of Review
 

 "Where the defendant preserves his challenge to jury instructions by objecting at trial, we review 'the trial court's decisions regarding jury instructions ...
 
 de novo
 
 [.]' "
 
 State v. Hope
 
 ,
 
 223 N.C.App. 468
 
 , 471-72,
 
 737 S.E.2d 108
 
 , 111 (2012) (quoting
 
 State v. Osorio
 
 ,
 
 196 N.C.App. 458
 
 , 466,
 
 675 S.E.2d 144
 
 , 149 (2009) ).
 

 Where a defendant fails to object to the challenged instruction at trial, any error is generally reviewed under the plain error rule.
 
 State v. Odom
 
 ,
 
 307 N.C. 655
 
 ,
 
 300 S.E.2d 375
 
 (1983). "Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result."
 
 State v. Jordan
 
 ,
 
 333 N.C. 431
 
 , 440,
 
 426 S.E.2d 692
 
 , 697 (1993).
 

 B. Proximate Cause and Intervening Negligence
 

 Defendant argues the trial court's instruction on proximate cause was erroneous, confused the jurors, and the trial court committed plain error by failing to instruct the jury on intervening negligence. We disagree.
 

 The trial court instructed the jury in accordance with the applicable pattern jury instruction, as follows: "[T]he death of the victim was proximately caused by the unlawful act of the defendant done in a malicious manner." The trial court then gave the following
 
 *700
 
 supplemental instruction: "[T]he State must prove beyond a reasonable doubt only that the defendant's negligence was
 
 a
 
 proximate cause." (emphasis supplied). Defendant argues these two phrases are competing, and tend to suggest different formulations of the proof required of the State. Defendant contends the language of the supplemental instruction suggests to the jury that they not consider the impact of any negligence
 
 *318
 
 on the part of Ms. Siu. Defendant acknowledges he did not request a jury instruction on intervening negligence.
 

 In
 
 State v. Bailey
 
 ,
 
 184 N.C.App. 746
 
 ,
 
 646 S.E.2d 837
 
 (2007), this Court explained the law of proximate cause and intervening negligence in criminal prosecutions. In that case, the defendant was convicted of felony death by motor vehicle.
 
 Id
 
 . at 747,
 
 646 S.E.2d at 838
 
 . The State's evidence tended to show the defendant was traveling behind a vehicle driven by the decedent. The decedent had stopped her vehicle in the roadway. The defendant applied his brakes, was unable to stop, and his vehicle collided into the back of the decedent's vehicle.
 
 Id
 
 . A blood sample obtained from the defendant showed a blood alcohol content of 0.22.
 
 Id
 
 .
 

 The defendant requested an instruction on the decedent's "contributory negligence."
 
 Id
 
 . at 748-49,
 
 646 S.E.2d at 839
 
 . This Court explained:
 

 Intervening negligence in cases such as this is relevant as to whether defendant's actions were the proximate cause of the decedent's death.
 
 State v. Harrington
 
 ,
 
 260 N.C. 663
 
 , 666,
 
 133 S.E.2d 452
 
 , 455 (1963). An instruction to that effect, if denied, would have warranted a new trial.
 
 See
 

 State v. Hollingsworth
 
 ,
 
 77 N.C.App. 36
 
 , 40,
 
 334 S.E.2d 463
 
 , 466 (1985). Accordingly, this Court has granted a new trial where defendant requested an instruction on intervening negligence because the question of whether defendant's conduct was the proximate cause of death is a question for the jury.
 
 Id
 
 . In the instant case, however, defendant did not seek such an instruction. Moreover, the trial court accurately instructed the jury by stating that, " '[t]here may be more than one proximate cause of an injury. The State must prove beyond a reasonable doubt only that the defendant's negligence was
 
 a
 
 proximate cause.' " Accordingly, we find that the trial court did not err in denying defendant's requested instruction.
 

 Id
 
 . at 749,
 
 646 S.E.2d at 839
 
 .
 

 The Court further explained:
 

 Even assuming [the decedent] was negligent, "[i]n order for negligence of another to insulate defendant from criminal liability, that negligence must be such as to break the causal chain of defendant's negligence; otherwise, defendant's culpable negligence remains a proximate cause, sufficient
 
 *319
 
 to find him criminally liable."
 
 Hollingsworth
 
 ,
 
 77 N.C.App. at 39
 
 ,
 
 334 S.E.2d at 465
 
 . In the instant case, [the decedent's] negligence, if any, would be, at most, a
 
 concurring
 
 proximate cause of
 
 *701
 
 her own death.
 
 See
 

 id
 
 . at 39,
 
 334 S.E.2d at 466
 
 . This is especially true here, where the State's evidence tended to show that defendant's blood alcohol content was over twice the legal limit. This impairment inhibited defendant's ability to "exercise [ ] due care [and] to keep a reasonable and proper lookout in the direction of travel[.]"
 
 Id
 
 .
 

 Id
 
 . at 749,
 
 646 S.E.2d at 839-40
 
 (emphasis in original).
 

 While Defendant's counsel argued at various times that causation was an issue in this case, our review of the record does not demonstrate "the jury probably would have reached a different result" if the instruction on intervening negligence was given.
 
 Jordan
 
 ,
 
 333 N.C. at 440
 
 ,
 
 426 S.E.2d at 697
 
 . Overwhelming evidence, including the testimonies of three eye witnesses, was presented to show Defendant drove through the red light, while grossly impaired and caused the crash. Our review of the record on appeal concludes the only evidence to hint Ms. Siu may have been negligent in causing the crash is Defendant's off-handed comment to Officer Cerdan prior to the blood draw, when he asked if Officer Cerdan "tested the person that ran the red light." Defendant has failed to show plain error by the absence of a jury instruction on intervening negligence.
 

 Even presuming Ms. Siu was somehow negligent, "her negligence, if any, would be, at most, a
 
 concurring
 
 proximate cause of her own death."
 
 Bailey
 
 ,
 
 184 N.C.App. at 749
 
 ,
 
 646 S.E.2d at 839-40
 
 (emphasis in original). The State's evidence tended to show that Defendant's blood alcohol content was over twice the legal limit. "This impairment inhibited defendant's ability to exercise due care and to keep a reasonable and proper lookout in the direction of travel."
 
 Id
 
 . (citation, quotation marks, and brackets omitted). The trial court's supplemental instruction on proximate cause was an accurate statement of the law.
 
 See
 

 id
 
 . at 749,
 
 646 S.E.2d at 839
 
 .
 

 C. Instruction on Felonious Serious Injury by Vehicle
 

 Defendant also argues the trial court erred by instructing the jury with regard to the charge of felonious serious injury by vehicle, as follows:
 

 And fifth, that the impaired driving by the defendant proximately, but unintentionally, caused the victim's serious injury. Proximate cause is a real cause, a cause without
 
 *320
 
 which the victim's serious injury would not have occurred. The defendant's act need not have been the last or nearest cause. It is sufficient if it concurred with some other cause acting at the same time which, in combination with it, proximately caused the victim's serious injury.
 

 Defendant cites
 
 N.C. Gen. Stat. § 20-141.4
 
 (a4)(3) (2015), which states: "The commission of the offense ... is
 
 the
 
 proximate cause of the serious injury." (emphasis supplied). Defendant asserts this language "forecloses the possibility of the state proving proximate cause in conjunction with some other concurrent cause." We disagree.
 

 Defendant acknowledges in his brief this Court's previous rejection of this argument.
 
 See
 

 State v. Leonard
 
 ,
 
 213 N.C.App. 526
 
 , 530,
 
 711 S.E.2d 867
 
 , 871 (2011) (defendant's operation of a motor vehicle under the influence of an impairing substance "need not be the only proximate cause of a victim's injury in order for defendant to be found criminally liable; a showing that defendant's action of driving while under the influence was one of the proximate causes is sufficient.") The trial court accurately instructed the jury in conformity with the law. This argument is without merit and is overruled.
 

 VI. Exclusion of Evidence that the Child Victim was not Properly Restrained
 

 Defendant argues the trial court erred by denying his requests to allow evidence that Khai was not properly restrained in a child seat pursuant to
 
 N.C. Gen. Stat. § 20-137.1
 
 . We disagree.
 

 A. Standard of Review
 

 This Court reviews the trial court's decision to exclude evidence for an abuse of discretion.
 
 State v. Cooper
 
 ,
 
 229 N.C.App. 442
 
 , 446-449,
 
 747 S.E.2d 398
 
 , 403-404 (2013).
 

 B. Analysis
 

 The statute cited by Defendant states, "Every driver who is transporting one or more passengers of less than 16 years of age shall have all such passengers properly secured in a child passenger restraint system or seat belt which meets federal standards applicable at the time of its manufacture."
 
 N.C. Gen. Stat. § 20-137.1
 
 (a) (2015). However, the law also provides, "Evidence of failure to wear a seat belt shall not be admissible in any criminal or civil trial, action, or proceeding except in an action based on a violation of this section or as justification for the stop of a vehicle or detention of a vehicle operator and passengers."
 

 *321
 

 N.C. Gen. Stat. § 20-135
 
 .2A(d) (2015). Furthermore, a child restraint system violation "shall not be evidence of negligence or contributory negligence."
 
 N.C. Gen. Stat. § 20-137.1
 
 (d)(4) (2015). Defendant's argument is without merit and is overruled.
 

 VII. Conclusion
 

 Defendant elected not to exercise multiple opportunities to have witnesses or an attorney present after his arrest pursuant to N.C. Gen. Stat. § 15A-501(5). Defendant cannot demonstrate he was irreparably prejudiced by the absence of a witness or attorney or by the time period, which elapsed between his arrest and appearance before a magistrate to warrant dismissal of his charges.
 

 Cooke offered no testimony that would tend to sway the jury in deciding Defendant's guilt. Defendant has failed to show the trial court committed prejudicial error by not allowing Defendant to cross-examine Cooke regarding
 
 *702
 
 the contents of his civil complaint against Defendant and Ms. Siu to show bias.
 

 The trial court's jury instructions on proximate cause were accurate and did not mislead the jury. Defendant has failed to show the trial court committed plain error by failing to give an instruction on intervening negligence.
 

 The trial court did not abuse its discretion by not allowing evidence that Khai was not properly restrained in a child seat. Defendant received a fair trial, free from prejudicial errors he argued.
 
 It is so ordered.
 

 NO PREJUDICIAL ERROR.
 

 Judges McCULLOUGH and DILLON concur.
 

 Judge McCULLOUGH concurred in this opinion prior to 24 April 2017.