IN THE SUPREME COURT OF NORTH CAROLINA

No. 79PA18

Filed 3 April 2020

STATE OF NORTH CAROLINA

v.

KENNETH VERNON GOLDER

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 257 N.C. App. 803, 809 S.E.2d 502 (2018), affirming judgments entered on 12 October 2015 by Judge Henry W. Hight Jr. in the Superior Court, Wake County. On 9 May 2019, the Supreme Court allowed the State's conditional petition for discretionary review. Heard in the Supreme Court on 9 December 2019.

> *Joshua H. Stein, Attorney General, by Michael T. Henry, Assistant Attorney General, for the State-appellee.*
>
> *Anne Bleyman for defendant-appellant.*
>
> *Glenn Gerding, Appellate Defender; and Southern Coalition for Social Justice, by John F. Carella and Ivy A. Johnson, for North Carolina Advocates for Justice, amicus curiae.*

HUDSON, Justice.

Pursuant to petitions for discretionary review filed by defendant and the State, we review the following issues: (1) whether the Court of Appeals erred in holding that defendant failed to preserve his challenges to the sufficiency of the State's evidence; (2) whether the State presented sufficient evidence that defendant aided and abetted

another; and (3) whether the State presented sufficient evidence that defendant obtained a thing of value to support his obtaining property by false pretenses conviction. We conclude that defendant did preserve his challenges to the sufficiency of the evidence for appeal. However, because we conclude that the State presented sufficient evidence that defendant aided and abetted another and that he obtained a thing of value, we modify and affirm the decision of the Court of Appeals.

Factual and Procedural Background

On 25 February 2014, the Wake County grand jury returned a bill of indictment charging defendant with (1) obtaining property worth over $100,000 by false pretenses in violation of N.C.G.S. § 14-100; (2) accessing a government computer in violation of N.C.G.S. § 14-454.1; (3) altering court records in violation of N.C.G.S. § 14-221.2; (4) a misdemeanor bail bond violation under N.C.G.S. § 58-71-95; and (5) a misdemeanor for performing bail bonding without being qualified and licensed under N.C.G.S. § 58-71-40. The indictment arose from allegations that defendant and Kevin Ballentine, a public employee with the Wake County Clerk's Office, devised a scheme in which defendant would pay Ballentine to alter or falsify court documents to secure remission of bail bond forfeitures.

Before we summarize the evidence presented at trial, we briefly outline the statutory bail bond forfeiture procedures. Specifically, if a defendant is released on a bail bond under Chapter 15A, Article 26 of the General Statutes and "fails on any occasion to appear before the court as required, the court shall enter a forfeiture for

the amount of that bail bond in favor of the State against the defendant and against each surety on the bail bond." N.C.G.S. § 15A-544.3(a) (2017). For purposes of this case, a surety on a bail bond includes a " 'Professional bondsman' mean[ing] any person who is approved and licensed by the Commissioner of Insurance under Article 71 of Chapter 58 of the General Statutes" and who provides cash or approved securities to secure a bail bond. N.C.G.S. § 15A-531(7)–(8) (2017); *see also id.* § 15A-531(8) (" 'Surety' means . . . insurance compan[ies], . . . professional bondsm[e]n, . . . [and] accommodation bondsmen."). The defendant and the sureties are notified of the entry of forfeiture by receiving a copy of the forfeiture by first-class mail. *Id.* § 15A-544.4(a)–(b) (2017). Importantly, the entry of forfeiture must contain "[t]he date on which the forfeiture will become a final judgment . . . if not set aside before that date." *Id.* § 15A-544.3(b)(8).

Under certain exclusive, statutorily-enumerated circumstances, an entry of forfeiture may be set aside, including by motion of either the defendant or a surety. N.C.G.S. § 15A-544.5 (b), (d) (2017); *see also id.* § 15A-544.5(c) (allowing relief from an entry of forfeiture in the event that the trial court enters an order striking the defendant's failure to appear). If neither the district attorney nor the county board of education files a written objection to the motion to set aside "by the twentieth day after a copy of the motion is served by the moving party[,] . . . the clerk shall enter an order setting aside the forfeiture, regardless of the basis for relief asserted in the motion, the evidence attached, or the absence of either." *Id.* § 15A-544.5(d)(4).

The evidence at trial here tended to show that Ballentine, who worked for the Wake County Clerk's Office in various capacities from 1999 until 2013, was involved in a scheme with defendant to exploit the automatic set-aside provision under N.C.G.S. § 15A-544.5(d)(4) in exchange for cash. Ballentine understood defendant to be working in the bail bond industry. Evidence produced at trial tended to show that defendant was not a licensed bail bondsman. Ballentine testified that the scheme began in 2006 or 2007 and continued until 2012. During that period, through text messages, defendant sent Ballentine lists with the names and file numbers of cases in which a bond forfeiture had been entered. After receiving a list of cases from defendant, Ballentine would enter a motion to set aside the bond forfeiture for each of the cases into the Wake County Clerk's Office's electronic records system, known as VCAP. Because no motion had actually been filed in the case by the parties, neither the district attorney nor the county board of education would receive notice of the motion and were without an opportunity to object. Therefore, after twenty days, the bond forfeiture would automatically be set aside. *See* N.C.G.S. § 15A-544.5(d)(4). As a result, defendant's bail bonding company would not be required to pay the bond as it otherwise would have been required to do if the forfeiture remained in effect.

In exchange for entering the motions to set aside into VCAP, defendant would pay Ballentine $500 for each list of cases. Ballentine testified that he received payment "normally once every other week" while he and defendant carried out this scheme. The payments were made in cash either by defendant leaving an envelope

with the payment in Ballentine's truck, or meeting Ballentine in person. Ballentine ended his arrangement with defendant in November of 2012. Ballentine was eventually terminated from his position at the Wake County Clerk's Office as a result of his involvement in the scheme with defendant, as well as other similar schemes. In September of 2013, he began cooperating with the State Bureau of Investigation concerning his involvement in the schemes.

At the close of the State's evidence at trial, defendant moved to dismiss. In moving to dismiss, defense counsel stated the following:

> Your Honor, at this time we certainly would like to make our motion to dismiss. As we are all aware, following the State's case in chief, this is our time to make such a motion.
>
> In giving the State the benefit of all reasonable inferences, we are quite confident that several of these charges should be dismissed, if not all, immediately.

Defense counsel then went on to address the individual charges, but did not specifically argue that the State failed to present sufficient evidence that defendant aided and abetted Ballentine in obtaining property by false pretenses, accessing a government computer, or altering court records. Defense counsel did, however, challenge defendant's obtaining property by false pretenses charge on the basis of several specific grounds. Defense counsel argued that the State's evidence was insufficient to prove that defendant obtained (1) a thing of value, because, at the time that Ballentine entered the motions to set aside the bond forfeitures, the prejudgment notice of forfeiture did not entitle the Wake County school board to an immediate

interest in the bond amount; and (2) $100,000 worth of property. The trial court denied defendant's motion to dismiss. Defendant then presented evidence and testified on his own behalf.

At the close of all evidence, defendant again moved to dismiss the charges in open court. In making this motion, defense counsel stated that "[a]t this time we would certainly like to reiterate or readdress our motions . . . to dismiss." Defense counsel then went on to repeat defendant's earlier argument against his obtaining property by false pretenses charge, asserting that the State did not present sufficient evidence that defendant obtained property with a value of $100,000 or more. However, defense counsel did not specifically argue—as defense counsel did in the first motion to dismiss—that the State failed to prove that defendant obtained a thing of value. The trial court again denied defendant's motion to dismiss.

The jury then found defendant guilty of (1) obtaining property worth less than $100,000 by false pretenses; (2) accessing a government computer; (3) altering court records; and (4) unlicensed bail bonding. The trial court sentenced defendant to consecutive terms of imprisonment totaling thirty-five to forty-three months for obtaining property by false pretenses, accessing a government computer, and altering court records. Defendant received an additional consecutive forty-five-day sentence as a result of his misdemeanor unlicensed bail bonding conviction. Defendant was also ordered to pay $480,100 in restitution. Defendant appealed his convictions to the Court of Appeals.

At the Court of Appeals, defendant argued, in pertinent part, that the State failed to present sufficient evidence that he (1) aided and abetted Ballentine in committing the felonies of obtaining property by false pretenses, accessing a government computer, or altering court records; and (2) obtained a thing of value, as required under the obtaining property by false pretenses statute. In support of his argument that the State failed to present sufficient evidence that he obtained anything of value, defendant repeated the same argument made by defense counsel to the trial court in the first motion to dismiss. Specifically, defendant argued that, at the time the false representations were made, neither the State nor the Wake County school board was entitled to an "immediate interest" in the bond amount.

The Court of Appeals disagreed, concluding that defendant waived his challenge to the sufficiency of the State's evidence of aiding and abetting "[b]ecause [d]efendant made several specific arguments when moving the trial court to dismiss certain charges, but did not challenge the State's aiding and abetting theory." *State v. Golder*, 257 N.C. App. 803, 811, 809 S.E.2d 502, 508 (2018). With regard to defendant's argument that the State's evidence was insufficient to prove that he obtained a thing of value, the Court of Appeals concluded that defendant waived his right to appellate review. *Id.* at 813–14, 809 S.E.2d at 508–09. Specifically, the Court of Appeals recognized that defense counsel argued in the first motion to dismiss "that elimination of contingent future interest in property does not fulfill the obtaining 'property' requirement." *Id.* at 813, 809 S.E.2d at 509. However, the Court of Appeals

then reasoned that the second motion to dismiss, in which defense counsel only argued "that the dollar amount attributed to the thing of value obtained was less than alleged in the indictment, [ ] narrowed the scope of his objection, and that objection is all that would be reviewable by this Court." *Id.* at 813, 809 S.E.2d at 509. Accordingly, the Court of Appeals concluded that the only issue that was presented for review was the actual value of the property obtained and "[d]efendant [could not] argue [on appeal] that the evidence was insufficient because there was *no* thing of value." *Id.* at 813, 809 S.E.2d at 509.

We conclude that defendant preserved each of his challenges to the sufficiency of the evidence. However, because we conclude that the State presented sufficient evidence that defendant aided and abetted Ballentine, and that he obtained a thing of value, we modify and affirm the decision of the Court of Appeals.

Analysis

I.   Plain error

In defendant's petition for discretionary review, he requested that we review the issue of "[w]hether the Court of Appeals erred in announcing a new rule that the sufficiency of the evidence could be reviewed on appeal for plain error." Because the Court of Appeals did not actually announce a new rule that the sufficiency of the evidence can be reviewed for plain error, we conclude that the Court of Appeals did not err on this issue.

A.   Standard of Review

"This Court reviews the decision of the Court of Appeals to determine whether it contains any errors of law." *State v. Melton*, 371 N.C. 750, 756, 821 S.E.2d 424, 428 (2018) (citing N.C. R. App. P. 16(a); *State v. Mumford*, 364 N.C. 394, 398, 699 S.E.2d 911, 914 (2010)).

B.     Discussion

We conclude that the Court of Appeals did not err because the court did not announce a new rule that sufficiency of the evidence issues can be reviewed under the plain error standard of review. Instead, the Court of Appeals merely recited Rule 10(a)(4) of the North Carolina Rules of Appellate Procedure and noted that "[d]efendant has not argued plain error." *Golder,* 257 N.C. App. at 811, 809 S.E.2d at 508. We do not interpret the court's statement that defendant did not argue plain error as the pronouncement of a new rule governing appellate review. However, we take this opportunity to reiterate that "[a]n appellate court will apply the plain error standard of review to unpreserved instructional and evidentiary errors in criminal cases." *State v. Maddux*, 371 N.C. 558, 564, 819 S.E.2d 367, 371 (2018) (citing *State v. Lawrence*, 365 N.C. 506, 512, 723 S.E.2d 326, 330 (2012)). Further, this Court has expressly held that Rule 10(a)(3) (previously codified at Rule 10(b)(3)) governs the preservation of a sufficiency of the evidence issue, to the exclusion of plain error review. *See State v. Richardson*, 341 N.C. 658, 676–66, 462 S.E.2d 492, 504 (1995).

Because the Court of Appeals did not announce a new rule allowing for plain error review of sufficiency of the evidence issues, we conclude that the court did not err.

II.     Preservation

We conclude that defendant preserved each of his challenges to the sufficiency of the State's evidence with regard to both (1) the State's theory that he aided and abetted Ballentine in committing the offenses; and (2) that he obtained a thing of value. As discussed below, Rule 10(a)(3) of the Rules of Appellate Procedure provides that when a defendant properly moves to dismiss, the defendant's motion preserves all sufficiency of the evidence issues for appellate review. The Court of Appeals' conclusion to the contrary relied on (1) inapposite case law from our Court; and (2) a line of cases in which the Court of Appeals misinterpreted the extent to which a defendant's motion to dismiss preserves sufficiency of the evidence issues for appellate review.

A.     Standard of Review

The standard of review for this issue is the same as the last issue.

B.     Discussion

We conclude that defendant properly preserved each of his challenges to the sufficiency of the State's evidence for appellate review.

Rule 10(a)(3) of the North Carolina Rules of Appellate Procedure provides that, in a criminal case, to preserve an issue concerning the sufficiency of the State's

evidence, the defendant must make "a motion to dismiss the action . . . at trial." N.C.

R. App. P. 10(a)(3). Rule 10(a)(3) also provides that:

> If a defendant makes such a motion after the State has presented all its evidence and has rested its case and that motion is denied and the defendant then introduces evidence, defendant's motion for dismissal . . . made at the close of [the] State's evidence is waived. Such a waiver precludes the defendant from urging the denial of such motion as a ground for appeal.

*Id.*

However, although Rule 10(a)(3) requires a defendant to make a motion to dismiss in order to preserve an insufficiency of the evidence issue, unlike Rule 10(a)(1)–(2), Rule 10(a)(3) does not require that the defendant assert a specific ground for a motion to dismiss for insufficiency of the evidence. *Id.*; *compare* N.C. R. App. P. 10(a)(3) *with* N.C. R. App. P. 10(a)(1)–(2) (requiring, as a general rule, that a defendant state the "grounds" for an objection, particularly when objecting to a jury instruction).

Accordingly, our Rules of Appellate Procedure treat the preservation of issues concerning the sufficiency of the State's evidence differently than the preservation of other issues under Rule 10(a). By not requiring that a defendant state the specific grounds for his or her objection, Rule 10(a)(3) provides that a defendant preserves all insufficiency of the evidence issues for appellate review simply by making a motion to dismiss the action at the proper time.

This interpretation of Rule 10(a)(3) is consistent with this Court's recognition that a motion to dismiss places an affirmative duty upon the trial court to determine whether, when taken in the light most favorable to the State, there is substantial evidence for every element of each charge against the accused. *See State v. Crockett,* 368 N.C. 717, 720, 782 S.E.2d 878, 881 (2016) ("In ruling on a motion to dismiss, the trial court need determine only whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator." (quoting *State v. Hill*, 365 N.C. 273, 275, 715 S.E.2d 841, 842–43 (2011))); *State v. Smith*, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980) ("In considering a motion to dismiss, it is the duty of the court to ascertain whether there is substantial evidence of each essential element of the offense charged." (quoting *State v. Allred*, 279 N.C. 398, 183 S.E.2d 553 (1971))); *State v. Stephens*, 244 N.C. 380, 383, 93 S.E.2d 431, 433 (1956) (". . . the trial court must determine whether the evidence taken in the light most favorable to the State is sufficient to go to the jury. That is, whether there is substantial evidence against the accused of every essential element that goes to make up the offense charged."). Because our case law places an affirmative duty upon the trial court to examine the sufficiency of the evidence against the accused for every element of each crime charged, it follows that, under Rule 10(a)(3), a defendant's motion to dismiss preserves all issues related to sufficiency of the State's evidence for appellate review.

Here, defendant made a proper motion to dismiss at the close of the State's evidence. Then, after defendant presented evidence, he made another motion to

dismiss at the close of all evidence as required under Rule 10(a)(3). N.C. R. App. P. 10(a)(3). We hold that, under Rule 10(a)(3) and our case law, defendant's simple act of moving to dismiss at the proper time preserved all issues related to the sufficiency of the evidence for appellate review.

The Court of Appeals erred to the extent that it held that defendant (1) waived appellate review of the sufficiency of the State's evidence that he aided and abetted Ballentine by not specifically making that argument to the trial court; and (2) narrowed the scope of appellate review of the sufficiency of the State's evidence for his obtaining property by false pretenses conviction with the argument he made in his second motion to dismiss. *Golder*, 257 N.C. App. at 811, 809 S.E.2d at 508.

In reaching its conclusion that defendant waived appellate review of the sufficiency of the State's evidence that he aided and abetted Ballentine, the Court of Appeals relied on inapposite case law from this Court. Before discussing the decision of the Court of Appeals, we note that the State points to our decision in *State v. Benson*, in which we held that in moving to dismiss, the party must argue a specific insufficiency of the evidence issue in order to preserve that issue for appellate review. 234 N.C. 263, 264, 66 S.E.2d 893, 894 (1951). In *Benson*, this Court concluded that although "[t]he defendant entered a general demurrer to the evidence and moved to dismiss," the general demurrer did not "present for decision the question [of] whether there was any sufficient evidence to support the count charging a conspiracy." 234 N.C. at 264, 66 S.E.2d at 894. We stated that "[i]f defendant desired to challenge the

sufficiency of the evidence to establish a conspiracy, he should have directed his motion to that particular count." *Id.* at 264, 66 S.E.2d at 894.

However, *Benson* predated the Rules of Appellate Procedure and is now directly contrary to Rule 10(a)(3), which contains no requirement that a defendant state a specific ground to preserve an insufficiency of the evidence issue. *See* N.C. R. App. P. 10(a)(3) (first adopted in 1975). Accordingly, *Benson* is overruled to the extent that it is contrary to Rule 10(a)(3).

Turning to the decision of the Court of Appeals, the court heavily relied on our decision in *State v. Eason* for the proposition that "[i]n order to preserve a question for appellate review, a party must have presented the trial court with a timely request, objection or motion, stating the specific grounds for the ruling sought if the specific grounds are not apparent." *Golder*, 257 N.C. App. at 811, 809 S.E.2d at 507–08 (quoting *State v. Eason*, 328 N.C. 409, 420, 402 S.E.2d 809, 814 (1991)). However, *Eason* applied then Rule 10(b)(1) of the Rules of Appellate Procedure, later recodified as Rule 10(a)(1). *See* N.C. R. App. P. 10(a)(1) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context.").

As discussed above, issue preservation under Rule 10(a)(3) is not the same as preservation under Rule 10(a)(1), because Rule 10(a)(3) does not require that a defendant advance a specific ground for a motion to dismiss in order to preserve all

challenges to the sufficiency of the evidence for appellate review. *Compare* N.C. R. App. P. 10(a)(1) *with* N.C. R. App. P. 10(a)(3). Accordingly, the Court of Appeals erred by relying on *Eason* to improperly insert the "specific grounds" requirement under Rule 10(a)(1) into Rule 10(a)(3).

Moreover, in holding that defendant waived appellate review of whether the State's evidence was sufficient to prove that he aided and abetted Ballentine, the Court of Appeals improperly relied on our decision in *State v. Garcia* for the proposition that "[m]atters that are not raised and passed upon at trial will not be reviewed for the first time on appeal." *Golder*, 257 N.C. App. at 811, 809 S.E.2d at 508 (quoting *State v. Garcia*, 358 N.C. 382, 410, 597 S.E.2d 724, 745 (2004)). *Garcia* involved the question of whether a constitutional issue had been preserved for review, not a challenge to the sufficiency of the evidence presented at trial. *See Garcia*, 358 N.C. at 410, 597 S.E.2d at 745 ("It is well settled that *constitutional matters* that are not 'raised and passed upon' at trial will not be reviewed for the first time on appeal." (emphasis added)) (citing *State v. Watts*, 357 N.C. 366, 372, 584 S.E.2d 740, 745 (2003); N.C. R. App. P. 10(b)(1) (later recodified as Rule 10(a)(1))). It was error for the Court of Appeals to rely on a rule that specifically applies to the preservation of constitutional issues in denying defendant appellate review of the insufficiency of the evidence issue.

In reaching its conclusion that defendant waived appellate review of whether the State's evidence was sufficient to prove that he obtained something of value, the

Court of Appeals relied on its own case law which has erroneously narrowed the scope of review preserved by a defendant's motion to dismiss. Specifically, the Court of Appeals relied on its opinion in *State v. Walker* to support its conclusion that defendant narrowed the scope of appellate review of his challenge to the sufficiency of the State's evidence to support his obtaining property by false pretenses charge in his second motion to dismiss. *Golder*, 257 N.C. App. at 813, 809 S.E.2d at 509 ("As in *Walker,* [d]efendant 'failed to broaden the scope of his motion when he renewed it following the close of all the evidence,' and therefore 'failed to preserve the issue[ ] of the sufficiency of the evidence as to the other elements of the charged offense[ ] on appeal.' " (quoting *State v. Walker*, 252 N.C. App. 409, 413, 798 S.E.2d 529, 532 (2017))).

*Walker* is one case in a line of cases in which the Court of Appeals has viewed a defendant's motion to dismiss as falling under one of three categories: (1) a "general," "prophylactic" or "global" motion, which preserves all sufficiency of the evidence issues for appeal; (2) a general motion, which preserves all sufficiency of the evidence issues for appeal, even though a defendant makes a specific argument as to certain elements or charges; and (3) a specific motion, which narrows the scope of appellate review to only the charges and elements that are expressly challenged. *See Walker*, 252 N.C. App. at 411–412, 798 S.E.2d at 530–31 ("In *State v. Chapman*, this Court applied the 'swapping horses' rule to a scenario in which the defendant argued before the trial court that the State presented insufficient evidence as to one element

of a charged offense, and on appeal asserted the State presented insufficient evidence as to a different element of the same charged offense. . . . A general motion to dismiss requires the trial court to consider the sufficiency of the evidence on all elements of the challenged offenses, thereby preserving the arguments for appellate review." (citations omitted))). As discussed above, merely moving to dismiss at the proper time under Rule 10(a)(3) preserves *all* issues related to the sufficiency of the evidence for appellate review. Therefore, the Court of Appeals' jurisprudence, which has attempted to categorize motions to dismiss as general, specifically general, or specific, and to assign different scopes of appellate review to each category, is inconsistent with Rule 10(a)(3).

Accordingly, we conclude that each of defendant's challenges to the sufficiency of the State's evidence, both that he aided and abetted Ballentine and that he obtained a thing of value, are preserved for appellate review.

III.    Sufficiency of the Evidence

Turning to the merits of each of defendant's challenges to his convictions, we conclude that the State presented sufficient evidence that defendant (1) aided and abetted Ballentine; and (2) obtained a thing of value to support the obtaining property by false pretenses charge.

A.    Standard of Review

"In ruling on a motion to dismiss, the trial court need determine only whether there is substantial evidence of each essential element of the crime and that the

defendant is the perpetrator." *State v. Winkler*, 368 N.C. 572, 574, 780 S.E.2d 824, 826 (2015) (quoting *State v. Mann*, 355 N.C. 294, 301, 560 S.E.2d 776, 781 (2002)). "Substantial evidence is [the] amount . . . necessary to persuade a rational juror to accept a conclusion." *Id.* (quoting *Mann*, 355 N.C. at 301, 560 S.E.2d at 781). In evaluating the sufficiency of the evidence to support a criminal conviction, the evidence must be considered "in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom." *Id.* (quoting *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980)). In other words, if the record developed at trial contains "substantial evidence, whether direct or circumstantial, or a combination, 'to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied.' " *Id.* at 575, 780 S.E.2d at 826 (quoting *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988)). "Whether the State presented substantial evidence of each essential element of the offense is a question of law; therefore, we review the denial of a motion to dismiss de novo." *State v. Chekanow*, 370 N.C. 488, 492, 809 S.E.2d 546, 550 (2018) (quoting *Crockett*, 368 N.C. at 720, 782 S.E.2d at 881).

B.    Discussion

i.    Aiding and Abetting

As explained below, we conclude that the State presented sufficient evidence that defendant aided and abetted Ballentine in committing the offenses.

A person aids and abets another in committing a crime if "(i) the crime was committed by some other person; (ii) the defendant knowingly advised, instigated, encouraged, procured, or aided the other person to commit that crime; and (iii) the defendant's actions or statements caused or contributed to the commission of the crime by that other person." *State v. Goode*, 350 N.C. 247, 260, 512 S.E.2d 414, 422 (1999) (citing *State v. Bond*, 345 N.C. 1, 24, 478 S.E.2d 163, 175 (1996)). We have stated that:

> Mere presence, even with the intention of assisting in the commission of a crime, cannot be said to have incited, encouraged, or aided the perpetrator thereof, unless the intention to assist was in some way communicated to him; but, if one does something that will incite, encourage, or assist the actual perpetration of a crime, this is sufficient to constitute aiding and abetting.

*State v. Hoffman*, 199 N.C. 328, 154 S.E. 314, 316 (1930) (citations omitted).

Defendant challenges the sufficiency of the evidence presented by the State in support of its theory of aiding and abetting on the basis that the same evidence cannot be used to satisfy two of the elements of aiding and abetting. Defendant argues that, as a result, the State's evidence that defendant paid Ballentine to fraudulently enter the motions to set aside cannot support more than one element. We are not persuaded by defendant's argument. Further, we note that the State presented substantial evidence that defendant aided and abetted Ballentine in committing the offenses.

First, defendant fails to provide support for his assertion that distinct evidence is needed to support each element. Specifically, defendant relies on our statement in

*State v. Davis* that "[c]ausation of a crime by an alleged accessory is not 'inherent' in the accessory's counsel, procurement, command or aid of the principal perpetrator." 319 N.C. 620, 626, 356 S.E.2d 340, 344 (1987). Defendant's reliance on this language from *Davis* is misplaced. This language in *Davis* was meant to disavow our prior decision in *State v. Hunter* to the extent that *Hunter* concluded that a jury instruction was proper when it failed to inform the jury that a defendant's counsel to the perpetrator must have a causal connection to the crime in order for the defendant to be found to have aided and abetted the principal. *See id.* at 626, 356 S.E.2d at 344. Accordingly, the Court in *Davis* did not hold that multiple elements of aiding and abetting could not be supported by the same evidence. *See id.* at 626, 356 S.E.2d at 344.

Further, defendant relies on our decision in *Gallimore v. Marilyn's Shoes* for the proposition that distinct evidence is needed to support each element. 292 N.C. 399, 233 S.E.2d 529 (1977). Defendant's reliance on our decision in *Gallimore* is misplaced. *Gallimore* addressed whether a claimant's injury was compensable under the Workmen's Compensation Act and, therefore, that case is plainly inapplicable to resolving the issue here. *See Gallimore*, 292 N.C. at 402, 233 S.E.2d at 531. Accordingly, defendant has failed to support his rule that distinct evidence is needed in support of each element of aiding and abetting.

Second, in the light most favorable to the State, defendant's payments to Ballentine were only part of the evidence which tended to demonstrate defendant's

guilt. Therefore, even assuming *arguendo* that single piece of evidence cannot be used to support multiple elements of aiding and abetting, the State presented sufficient evidence that defendant aided and abetted Ballentine. Specifically, the State presented evidence at trial that defendant (1) met with Ballentine and agreed to participate in the scheme; (2) sent text messages instructing Ballentine to enter the fraudulent motions to set aside in specific cases; and (3) paid Ballentine for entering the fraudulent motions. In the light most favorable to the State, the evidence tended to show that Ballentine entered the fraudulent motions, and that defendant "knowingly advised, instigated, encouraged, procured, or aided" Ballentine. *Goode*, 350 N.C. at 260, 512 S.E.2d at 422 (citing *Bond*, 345 N.C. at 24, 478 S.E.2d at 175). In the light most favorable to the State, this evidence also tended to show that defendant's actions "caused *or contributed*" to Ballentine entering the fraudulent set aside motions. *Goode*, 350 N.C. at 260, 512 S.E.2d at 422 (emphasis added) (citing *Bond*, 345 N.C. at 24, 478 S.E.2d at 175).

Accordingly, we conclude that the State's evidence was sufficient to support defendant's conviction on the theory that defendant aided and abetted Ballentine in carrying out the scheme.

### ii.    Obtaining Property by False Pretenses

We conclude that the State presented sufficient evidence that defendant obtained a thing of value to support his conviction for obtaining property by false pretenses.

A person obtains property by false pretenses when that person

> knowingly and designedly by means of any kind of false
> pretense whatsoever, whether the false pretense is of a
> past or subsisting fact or of a future fulfillment or event,
> obtain or attempt to obtain from any person within this
> State any money, goods, property, services, chose in action,
> or other thing of value with intent to cheat or defraud any
> person of such money, goods, property, services, chose in
> action or other thing of value

N.C.G.S. § 14-100 (2017).

Defendant challenges the sufficiency of the evidence supporting his conviction for obtaining property by false pretenses on the basis that the State presented insufficient evidence that defendant obtained a "thing of value" within the meaning of N.C.G.S. § 14-100. Specifically, defendant argues that "[i]n the light most favorable to the State, [defendant] did not obtain any property of the State or the School Board," because the fraudulent representations merely resulted in the "elimination of a potential future liability."

Assuming *arguendo* that the elimination of a potential future liability does not constitute "property" under N.C.G.S. § 14-100, that result is not dispositive. The statute does not only cover instances in which a defendant obtains "property," it also applies when a defendant "obtain[s] *or attempt*[*s*] to obtain . . . *any* . . . other thing of value." N.C.G.S. § 14-100 (emphases added). The fact that the statute imparts criminal liability when a defendant even *attempts* to obtain *any* "other thing of value" guides this Court in deciding to apply a broader definition of "thing of value" than

suggested by defendant. The evidence here shows that defendant and Ballentine, through their actions, attempted to surreptitiously divert attention from sums of bond money by altering bond forfeiture notations in court files. At a minimum, this was an attempt to reduce the amount that defendant's bail bond company was required to pay as surety for forfeited bonds and, therefore, constitutes a "thing of value" under N.C.G.S. § 14-100.

Accordingly, we conclude that defendant did obtain a "thing of value" under N.C.G.S. § 14-100 and, therefore, defendant's challenge to the sufficiency of the State's evidence to support his obtaining property by false pretenses conviction is unavailing.

## Conclusion

Because we conclude that the State presented sufficient evidence that defendant aided and abetted Ballentine and that he obtained a thing of value, we affirm the decision of the Court of Appeals as to those issues. However, we modify the decision of the Court of Appeals because we conclude that defendant did preserve each of his challenges to the sufficiency of the State's evidence.

MODIFIED AND AFFIRMED.